### RAGSDALE v. SOUTHERN RY.

1. INJUNCTION—DAMAGES—RENTS—RAILROADS—RIGHT OF WAY.— Under the charter of the Spartanburg and Union Railroad, lands taken by it without compensation can only be used for railroad purposes, and where its successor permits another to erect a house on the right of way and to use it for merchandising, the owner of the fee can sustain an action against such successor for damages and rents, and to enjoin such use of the building.

2. PLEADINGS—EVIDENCE—MOTIONS TO STRIKE OUT ALLEGATIONS— APPEAL.—Allegations of irrelevant facts can only be expunged by motion, and if not, evidence in response thereto becomes competent, and here the allegations remaining, and Judge not having been requested to pass on question that damages from competition were speculative, it cannot be raised for first time in this Court.

3. INJUNCTION—RAILROADS—RIGHT OF WAY.—Where verdict establishes that a railroad is using its right of way for purposes not permitted by its charter, the owner of the fee may have it enjoined from such use.

Before ALDRICH, J., Fairfield, spring term, 1900. Affirmed.

Action for damages and injunction by Edward B. and Glenn W. Ragsdale against Southern Railway Co., Laurence M. Blair and James B. Frazier. From judgment for plaintiffs, the defendant railway company appeals.

*Messrs. B. L. Abney* and *Duncan & Sanders,* for appellant. The latter cite: *Under facts here, appellant not liable for rent:* 69 Ind., 424; 45 N. Y., 234; 60 N. Y., 242; 13 Hun., 643; 94 N. C., 746; 15 S. C., 70; 19 Conn., 154; 1 Bail., 540; 2 Am. Lead. Ca., 747; 34 La. Ann., 624; 1 Md., 553. *Error to charge that rental value could be diminished by competition:* 117 Ind., 489; 25 S. C., 68. *Injunction should not have been granted:* Rev. Stat., 746; Code, 306; 22 S. C., 186.

*Messrs. A. S. & W. D. Douglass,* contra. The former cites: *Complaint stating any cause of action not amenable to demurrer:* 40 S. C., 540; 28 S. C., 86; 56 S. C., 38. *Where land is taken for public highway, fee remains in original owner:* Rice L., 383; 2 L. R. A., 255; 8 L. R. A., 180; 9 L. R. A., 295; 11 Am. R., 426; 114 U. S., 350; 10 L. R. A., 855. *Use here is unauthorized—not being for railroad purpose:* 6 Am. R., 181; 2 Bail., 271; 9 L. R. A., 295; 141 Ill., 509; 10 Ency., 2 ed., 1201; 7 L. R. A., 200. *Under charter here, owner of fee may use right of way so as not to conflict with railroad purposes:* 10 Ency., 2 ed., 1201; 31 Am. R., 190; 10 L. R. A., 855; 8 Am. R., 363, 58; 5 Am. R., 624. *Plaintiffs are entitled to same rights to buildings on right of way as former owner had:* 4 Rich. Eq., 50. *And can recover rents:* 9 L. R. A., 297; 6 Am. R., 181. *Also damages for diminution of rental value caused by competition:* 19 Ency., 1 ed., 855; 66 Miss., 595; 8 Ency., 2 ed., 579, 581; 10 *Id.,* 1165. *Injunction properly granted:* 8 Rich. Eq., 46; 10 S. C., 476; 54 S. C., 430; 39 L. R. A., 711. *Our construction of charter of S. & U. R. R. consistent with policy of this State as to rights of way:* Rev. Stat., 1750; Con. 1895, art. IX., sec. 20; art. III., sec. 31.

April 18, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. The complaint herein contains substantially the following allegations: That the plaintiffs are

seized in fee of the land therein described, through and over
which the railroad formerly belonging to the Spartanburg
and Union Railroad Company (operated by the appellant
since 1894) passes; that the Spartanburg and Union Rail-
road Company acquired under its charter, unto itself and
successors, against Wm. Blair, a former owner in fee of said
land (under whom and his assigns the plaintiffs claim title),
a right of way over said tract of land only for the purpose of
said railroad, and "so long as the same may be used only
for the purpose of said road and no longer." That Wm.
McC. Blair, who became the owner in fee of said land under
and by virtue of a levy and sale under a judgment and execu-
tion against Wm. Blair and a deed of conveyance from the
sheriff, built, while he was such owner, a storehouse and
warehouse on said land near said railroad, at his own ex-
pense and for his own use; that the right, title and interest
of Wm. McC. Blair, including said houses, is now and has
been since the 5th day of November, 1892, vested in the
plaintiffs. That after the plaintiffs became the owners in
fee of said land, subject only to said right of way for railroad
purposes and entered into possession thereof, including said
storehouse and warehouse, to wit: since 1st day of Novem-
ber, 1897, the Southern Railway Co. having obtained pos-
session of said warehouse through J. E. Blair, a former ten-
ant of plaintiffs, has, without the consent of and without
compensation to the plaintiffs, and in violation of their rights
in the premises, appropriated and converted to its use part
of said warehouse as a railroad depot, at a station called
Blairs, and has permitted, connived at or granted the use
of the other part of said warehouse to its codefendants, Lau-
rence M. Blair and James B. Frazier, for the purpose of
carrying on therein the business of general merchandise, con-
trary to the restrictions aforesaid of the charter of the Spar-
tanburg and Union Railroad Co.; that the annual rental
value of said warehouse is $75. That the other building
called a storehouse is and has been since plaintiffs entered
into possession of said land, occupied by a tenant of the

plaintiffs as a storehouse for general merchandise, which, until the opening of the competing store, was the only store for merchandise at Blairs; that in consequence of the defendants allowing or granting the use of said warehouse to its codefendants for the purpose of carrying on therein the business of general merchandise, and in consequence of its codefendants carrying on such business in competition with the tenant of plaintiffs, the rental value of the other storehouse has been greatly reduced, and the plaintiffs have thereby been damanged to the extent of $150.

The appellant in its answer denies the material obligation of the complaint, and alleges: "That on or about the year 1856, the Spartanburg and Union Railroad Co., whose rights, property and franchises are now held by this defendant, entered and constructed this railroad upon and over the said tract of land, without any contract or contracts in relation to said lands, signed by the owner thereof, or by his or her agent, or by any person or claimant then or thereafter claiming the same, or in possession thereof; that since the said location and construction of said railroad through said tract of land, the said railroad company and its successors and assigns, have continuously and uninterruptedly exercised ownership and control over said lands for the space of 100 feet on each side of the centre line of said railroad, and have used the same for all railroad purposes that it has seen fit to make of it, and this defendant, as successor to all the rights, property and franchises of said Spartanburg and Union Railroad Co., now holds and owns the said lands for the said space of 100 feet on each side of the centre line of said railroad.

"V. That on or about the year 1876, one William McC. Blair, then claiming to be the owner of the tract of land described in paragraph I. of the complaint herein, by and with the consent of the said railroad company, or its successor, built a storehouse and a warehouse on the east side of said railroad and within 100 feet of the centre line of said railroad, at or near Blair's station, and on the tract of land

through which said railroad passes as aforesaid; that the said William McC. Blair was permitted by said railroad company, as this defendant is informed, to erect said storehouse and warehouse, to be used for the purposes of a depot for said railroad and as a warehouse for the purpose of increasing the facilities of the said railroad in handling its freights and business at said Blair's station, and that upon the erection of said storehouse and warehouse it was used for the purposes aforesaid by said railroad company uninterruptedly and continuously until about the year 1897, when the building hereafter referred to became to be used by the defendant for the purposes of its railroad, and since said time this defendant has permitted and allowed the said storehouse and warehouse to remain upon the land whereon it was located, within 100 feet of the centre of said railroad.

"VI. That on or about the year 1891, one J. E. Blair, by and with the consent of the said railroad company, or its successor, built a storehouse and a warehouse on the west side of said railroad and within 100 feet of the centre line of said railroad, at or near said Blair's station, and on the tract of land through which said railroad passes as aforesaid; that the said J. E. Blair was permitted by said railroad company, or its successor, as this defendant is informed, to erect said storehouse and warehouse, to be used as a depot and warehouse for said railroad, and to increase the facilities of said railroad in handling its freights and business at said Blair's station, and said building is now so used by this defendant for said purposes; that incidentally to such use by this defendant, the defendant, Laurence M. Blair, may also be using a portion of said building in his merchandise business; but such use by him is without the express consent of this defendant, and was not the use for which the said building was constructed."

The appellant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, for the reasons set forth in the record. The demurrer was overruled.

25—60

The jury rendered a verdict in favor of the plaintiffs and for $150 damages against the defendants, Southern Railway Co. and Laurence M. Blair; and no damages against the defendant, James B. Frazier.

The Southern Railway. Co. appealed upon numerous exceptions. The appellant did not argue the exception alleging error in overruling the demurrer. It is, however, only necessary to refer to the reasons assigned by the Circuit Judge to show that it was properly overruled.

The first question argued by the appellant's attorneys is presented by the second exception, which is as follows: "II. Excepts because the presiding Judge erred as matter of law in refusing to charge defendants' fourth request, which was as follows: '4th, if under a charter, such as governing this case, a railroad company constructs its road over the lands of a person, and such owner fails to bring suit for compensation thereafter, as provided in the charter within the time limited, then the title of said owner to so much of said land as is provided by the charter is as completely divested as if the said land had been condemned under the provisions of the charter, and neither the then owner or any one claiming under him has a right to recover the land constituting the right of way of the company, or any building erected upon such right of way with the consent of the railroad company.' " Sec. IX. of the act incorporating the Spartanburg and Union Railroad Co. (vol. XI., p. 482), provides: "That the said Spartanburg and Union Railroad Company shall have power and capacity to purchase, take and hold in fee simple, or for years, to them and their successors, any lands, tenements or hereditaments that they may find necessary for the site on and along which to locate, run and establish the railroad aforesaid * * *" Section X. of said act provides: "That in any case where lands or private rights of way may be required by the said company for the purposes aforesaid, and the same cannot be purchased from the owner or owners for want of agreement of the parties, as to price or from any other cause, the same may be taken by

the company at a valuation to be made by commissioners; * * * and the lands and rights of way so valued by the commissioners or jury shall vest in the said company in fee simple so soon as the valuation may be paid or tendered and refused * * * In all assessments made by the commissioners or jury as aforesaid, after the construction of the road, or of the part thereof upon the land to be valued, reference shall be had to the true value of the land, at the time of the erection of the said road or part thereof, and the use thereof by the said company for the purpose of said road shall be considered as an actual possession of said land covered by said road, and the space of 100 feet on both sides of the said road as aforesaid." Sec. XI. of said act is as follows: "That in the absence of any written contract between the said company and the owner or owners of land through which the said railroad may be constructed, in relation to said land, it shall be presumed that the land upon which said railroad may be constructed, together with 100 feet on each side of the centre of said road, has been granted to the said company by the owner or owners thereof, and the said company shall have good right and title to the same (and shall have, hold and enjoy the same) unto them and their successors, so long as the same may be used only for the purposes of the said road and no longer, unless the person or persons to whom any right or title of such lands, tenements or hereditaments descend or come, shall prosecute the same within ten years next after the construction of such part or portion of the said road as may be constructed upon the lands of the person or persons so having or acquiring such right to the title as aforesaid; and that any person or persons to whom any such right or title to such lands, tenements or hereditaments belong or shall hereafter descend or come, do not prosecute the same within five years next after the construction of the part of the said road upon the lands of the person or persons so having or acquiring such right or title as aforesaid, then he or they, and all claiming under him or them, shall be forever barred to recover the same"

\* \* \* It will be well at the outset to bear in mind that this is not an action for compensation, but in part for damages. The distinction is thus pointed out in the case of *McLaughlin v. R. R. Co.*, 5 Rich., 598-9: "Assessment of compensation and an action for damages proceed upon wholly different principles. One subserves the purposes of the contemplated improvement, and equalizes its burden amongst those who enjoy its common benefit; the other, without regard to the advantage done, makes reparation for the damage sustained, and in so doing conclusively establishes between the parties a right which in future actions may be urged to the entire interruption of the public work. Where an assessment can be had against a company, the authority of the company to take is recognized, and the equitable duty which the sovereign has devolved upon the company of making compensation to the individual from whom more than his just contribution for the public good has been taken is enforced; an action for damages denies the authority to take, and is inconsistent with the right to have compensation distinguished from damages. The two cannot be concurrent remedies." His Honor could not have charged that "neither the then owner nor any one claiming under him has a right to recover \* \* \* any building erected upon such right of way with the consent of the railroad company," without invading the province of the jury, as such right depended upon the intention with which it was erected. If the building was erected under such circumstances as made it personalty instead of a fixture to the freehold, either the person erecting the building as owner or those claiming under him, had the right to recover it. *Evans v. McLucas*, 15 S. C., 67, cited with approval in *Watts v. Blalock*, 17 S. C., 157, Central Law Journal, 17 February, 1899, p. 132, in which there is an able discussion of the subject of fixtures. As the request contained an unsound proposition of law, there was no error in refusing to charge it, even if it stated the law correctly in other respects. But let us see if the law is correctly stated in the other part of the request. As hereinbefore stated,

there are three separate and distinct sections in the act incorporating the Spartanburg and Union Railroad Co., that relate to the tenure by which it held the lands over which the road passes.    Sec. IX. gives the "power and capacity to purchase, take and hold in fee simple."    Sec. X. provides that the lands valued by the commissioners or jury "shall vest in the said company in fee simple."    But no such words are to be found in sec. XI., which provides it shall be presumed that the land has been granted to the said company by the owner or owners thereof, and the said company shall have good right and title to the same (and shall have, hold and enjoy the same) unto them and their successors, "so long as the same may be used only for the purpose of the said road and no longer."    An act containing similar sections was construed in *Lewis* v. *R. R. Co.*, 2 Rich., 91.    That part of Judge Wardlaw's dissenting opinion in which he points out the difference in the two sections is quoted by the Court with approval, in *Waring* v. *R. R. Co.*, 16 S. C., 422, and is as follows.: "If he should permit the railroad company to hold, without complaint, until the expiration of ten years from the time the road was then finished, the land would become subject to the company's right to enjoy the slip occupied by them, so long as they continued to use it for their road and no longer; but if compensation should be claimed and paid, the fee simple absolute would thereby be vested in the company."    The legislature wisely made a distinction in the tenure by which the railroad company held the land, when it was under one or the other of said sections.    Having reached the conclusion that the rights of the parties are different under the foregoing sections, it is an additional reason why the Circuit Judge was correct in refusing the request. Our interpretation of the foregoing sections is that the railroad company acquired only a right of way over the land described in the complaint embracing the space of 100 feet on each side of the road.    It had, and its successors have, the right to the possession of said space, "so long as the same may be used only for the purpose of the said road and no

longer." Some of the uses which the appellant made of the said property were certainly not such as could be properly included under the term, "for the purpose of said road," and this violation of law gave the plaintiff a right of action as owners of the fee. These views render unnecessary the further consideration of the exceptions relating to this question.

The next question argued by the appellant's attorneys is that his Honor, the presiding Judge, erred in charging that the plaintiffs could recover the rental value of the store occupied by plaintiffs' tenant to the extent that rental value had been diminished by competition. The charge was responsive to the issue made by the pleadings. Sec. 181 of the Code provides: "If irrelevant or redundant matter be inserted in a pleading, it may be stricken out on motion of any person aggrieved thereby." Mr. Pomeroy, in sec. 552 of his Remedies and Remedial Rights, says: "The rule is established by the unanimous decisions of the Courts as well as by the provision found in the Codes, that the proper and only method of objecting to and correcting redundant, immaterial or irrelevant allegations in a pleading is a motion to strike out the unnecessary matter, and not a demurrer nor an exclusion of evidence at the trial. The new procedure thus furnishes by means of these motions, in case of insufficiency, redundancy, or irrelevancy, a speedy and certain mode of enforcing the fundamental doctrines of pleading (evidently intended for establishing) what it has established (evidently intended for pleaded), and of causing the complaints or petitions and answers to present single, clear and well defines issues" * * * In sec. 551 he says : "An allegation is irrelevant when the issue formed by its denial can have no connection with, nor effect upon, the cause of action." This language is quoted with approval in *Smith* v. *Smith,* 50 S. C., 67. As the Circuit Judge was not requested to rule upon the question whether the damages were too remote, such objection cannot be interposed for the first time in this Court.

The other exceptions raise the question whether there was error in granting the injunction. The wrong committed by the appellant on the property of the plaintiffs was not simply a trespass, but was continuous in its nature. The decision of the Circuit Court is sustained by the cases of *Bird* v. *R. R. Co.,* 8 Rich. Eq., 46; *Lamar* v. *R. R. Co.,* 10 S. C., 476; *McClellan* v. *Taylor,* 54 S. C., 430; *Bass* v. *R. R. Co.,* 39 L. R. A. (C. C. A.), 711. Mr. Freeman, in his note to the case of *Jerome* v. *Ross,* 11th Am. Dec., 500, after reviewing the principles underlying the granting of injunctions against trespassers, says: "It is thus seen that the ultimate ground upon which equitable intervention in cases of trespass rests is the inadequacy of legal remedies for the injury, which is the broad foundation of all remedial jurisdiction in equity. * * * An injury resulting from trespass may be incapable of compensation in damages, from a variety of reasons: (1) It may be destructive of the very substance of the estate: (2) it may not be capable of estimation in terms of money; (3) it may be so continuous and permanent that there is no instant of time when it can be said to be complete, so that its extent may be computed; (4) it may be vexatiously persisted in, in spite of repeated verdicts at law; (5) it may be committed by one who is wholly irresponsible, so that a verdict against him for damages would be entirely valueless; (6) it may be committed against one who is legally incapacitated from a beneficial use of the remedy at law." As the verdict of the jury establishes the fact that the appellant was using the property of the plaintiff on its right of way, other than for the purposes allowed by the charter, we fail to see wherein it has a just right to complain that it is enjoined from exercising in the future a right contrary to law and the provisions of its charter.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.