## 7060

### MASON v. APALACHE MILLS.

1. WATER COURSES—ISSUES.—Whether one riparian owner is making an unreasonable use of the water in the stream so as to make him liable to an owner below for damages to his property is always an issue for the jury where there is any evidence of unreasonable use, and in arriving at a conclusion the jury should consider the capacity of the stream, the adaptation of the machinery used to it, the general usage of the country in similar cases and any other fact bearing on the issue.

2. EVIDENCE.—AN EXPERT should not be permitted to state a fact learned by him by statements of others and not from observation.

3. WATER COURSES.—One riparian owner may, in the use of the stream, increase the flow in any way he sees proper, provided such use does not result in unreasonably increasing the flow to the injury of an owner below.

4. IBID.—TRESPASS.—Where the evidence tends to show a stream is used as it has been for a considerable time and the jury finds the issue of unreasonable use against defendant, this establishes a continuing trespass.

5. IBID.—IBID.—INJUNCTION.—One riparian owner may sue for damages past and future to his lands by the unreasonable use of the water by another, and if he recovers he is not entitled to an injunction against the trespass.

6. IBID.—INJUNCTION.—Under the facts in this case it is held the plaintiff is not entitled to injunction against defendant restraining it

from its present use of the water in the stream, unless he consent that defendant may clean out the bed of the stream through his lands. This conclusion explained not to deprive defendant of his right under secs. 1465 to 1468 of Code, to require plaintiff to clean out the bed of the stream.

7. REHEARING refused.

Before WATTS, J., Spartanburg, October term, 1907. Modified.

Action by R. B. Mason against Apalache Mills. From judgment for plaintiff, defendant appeals.

*Messrs. John Gary Evans, Haynsworth, Patterson & Blythe* and *William Henry Parker,* for appellant. *Messrs. John Gary Evans* and *Haynsworth, Patterson & Blythe* cite: *Did defendant exceed its legal rights?* 28 Ency., 957; 70 L. R. A. (N. S.), 460; 13 Gray, 442; 61 A. D., 468; 60 S. C., 254; 79 S. C., 351; 85 A. St. R., 725; 98 Mass., 574; 52 N. H., 86; 66 Ga., 71; 78 Ga., 386; 1 Rich., 444. *Rule as to extent of injunction:* 14 Ency., P. & P., 1184; 72 Ia., 510; 26 Pac., 795; 66 Pac., 733; 54 S. C., 437; 22 Cyc., 762, 776; 25 N. J. E., 460. *Plaintiff must show himself entitled to the remedy:* High on Inj., sec. 28; 22 Cyc., 90; 15 Wall, 227. *Plaintiff is not entitled to injunction if he could prevent injury to himself by reasonable effort:* 2 Joyce on Dam., sec. 1288; 22 C. C. A., 515; 18 S. W., 568.

*Mr. Parker* cites: *Verdict does not establish fact of nuisance:* High on Inj., sec. 740; Gould on Waters, sec. 506; 17 S. C., 417; 98 Am. R., 202; Adams' Equit., sec. 210; 80 S. C., 47; 63 S. C., 38; 49 S. C., 95. *Plaintiff has asked and received continuing damages and has no right to an injunction:* 17 S. C., 417; 2 Farnham on Waters, secs. 589, 991; 10 S. D., 575; 42 N. W., 625; 24 S. E., 730; 19 S. E., 521; 30 S. E., 741.

*Messrs. Stanyarne Wilson* and *Simpson & Bomar,* contra. *Mr. Wilson* cites: *Plaintiff, upon establishment of his*

*legal rights, is entitled to definite perpetual injunction:* 80
S. C., 47; Gould on Waters, secs. 528, 520, 512; 1 High on
Inj., sec. 739; 22 Cyc., 768, 740; 49 S. C., 135.

The opinion in this case was filed on September 17th,
but held up on petition for rehearing until

November 16, 1908.   The opinion of the Court was de-
livered by

MR. JUSTICE WOODS.   The defendant is a corporation,
owning and operating a cotton mill on South Tiger River,
in Spartanburg county.   It has constructed a dam, between
forty and fifty feet in height, for the storage of the water
of the river by which the mill is operated.   In accordance
with the method approved by engineers and the custom of
cotton mills in this State, the water is held back and stored
at night and from midday on Saturday until Monday morn-
ing while the mill is not running, in order to increase the
volume of water and the available power while the mill is in
operation.   When the flow of the stream is sufficient to fur-
nish power in excess of the requirements of the Apalache
Mills, the defendant uses the surplus to generate electric
power, which it sells and transmits to the Victor Mills.   The
power developed by the minimum flow of the stream is
known as the primary power, and that by the excess above
the minimum flow, which is stored by the dam, is called the
secondary power.

The plaintiff is the owner of a tract of land of about one
hundred and thirty-six acres on Tiger River, two miles
below the defendant's dam.   In his complaint, he asks for
damages and injunction against the defendant on two
causes of action.   The first cause of action rests on the
allegation that the defendant, in 1903, "without right, care-
lessly, and in wilful and conscious disregard of plaintiff's
rights," discharged into the Tiger River great quantities of
sand, which filled up the channel and thus caused the river

to rise higher in its banks and overflow, and soak the lands, and interfere with the streams and ditches by which it was drained. In the statement of his second cause of action, the plaintiff alleges the unreasonable use of the stream by the over-development of the water-power in that the height of the dam and the quantity of water retained and stored are out of proportion to the size of the stream, which is alleged to be small; and, hence, when the mill is in operation a quantity of water far greater than the normal flow rushes through to the channel below with great force, causing the river to rise rapidly and unnaturally to an additional height of from four to six feet.

The plaintiff thus sets out the damages alleged to result to him:

"a. The difference between the excessive flow of the water and the height of the stream while the wheel is in motion, and the almost total stoppage of the flow when the wheel shuts down, causes a constantly changing condition in the river banks, the same being soaked with water, and then, as the water recedes, being under the influence of the sun's rays, with the consequence of miasma, chills, fever, and other manifestations and products of malaria: by which plaintiff's said property has been seriously injured in value and the health of himself and family impaired and endangered.

"b. The excessive flow of water into the river, while the wheel is active, causes the water to rise much beyond its natural height, and in consequence, the valuable bottom land of plaintiff has become sobbed and soaked so as to be no longer productive or valuable; the streams and ditches clogged so as to no longer drain plaintiff's low lands; the bridges overflowed so as at times to be impassable, or used only with difficulty and danger; the timber upon said low land destroyed by the soaked condition thereof."

It is further alleged in the complaint the damages to the plaintiff are aggravated by the fact that the defendant, in addition to making an unreasonable use of the stream for its

own power, undertakes to develop and sell power to the
Victor Mill. The alleged unreasonable and unlawful use of
the stream is alleged to be a continuing nuisance, for which
the defendant has no remedy, except injunction. In the last
two paragraphs the allegation is made that the defendant
has expressed its purpose to continue the alleged tortious
use of the stream, and "that by the aforesaid acts and con-
duct of the defendant, plaintiff has been and will be dam-
aged in the sum of five thousand dollars." Judgment was
demanded on the first cause of action for one thousand
dollars damages; and on the second cause of action for five
thousand dollars damages, for the abatement of the alleged
nuisance and an injunction prohibiting its continuance.

The answer admitted the erection of the dam and the
use of the water, but denied that the dam was of unreason-
able height or that the water had been unreasonably used
or that its use had resulted in injury to the plaintiff.

At the close of his own testimony, the plaintiff admitted
the first cause of action had not been established, and sub-
mitted to a nonsuit as to that. There was a verdict against
the defendant for one hundred dollars, and the Circuit
Judge made an order of injunction, the terms of which
will be hereafter referred to.

No motion was made for a nonsuit or for the direction
of a verdict as to the second cause of action, but a motion
for a new trial was made and refused. In the exceptions,
it is insisted that a new trial should have been granted, (1)
because there was no evidence tending to show de-
fendant's use of the stream was unreasonable; (2)
because there was no evidence that defendant's use
of the water caused the stream to overflow its banks; (3)
because it appeared from the testimony, the defendant's use
of the stream would not have been attended with injury to
the plaintiff, but for the accumulation of sand in the river-
bed, produced by the great flood of 1903.

The exceptions on this point cannot be sustained. The
law applicable to the case is settled by *White* v. *Manf. Co.,*

60 S. C., 254, 38 S. E., 456, and may be thus stated in short: The different owners of land through which a stream flows are each entitled to the reasonable use of the water, and for an injury to one owner, incidental to the reasonable use of the stream by another, there is no right of redress. It does not necessarily follow from either the decrease in the volume of water due to its use by the upper proprietor or the increase due to the storage by the upper proprietor that there has been an unreasonable use, and, therefore, a right of action to the lower proprietor for any resulting injury. If it were the rule that the lower proprietor had the right to have the stream flow through his land in exactly its usual volume the result would be to destroy the equality of right of all the proprietors of the land through which the stream flowed and give to the lowest proprietor a monopoly of its use. Whether a riparian proprietor has made unreasonable use of the stream is always a question for the jury where there is any evidence tending to prove that the use was unreasonable. In the decision of the question all the circumstances are to be considered by the jury—the capacity of the stream, the adaptation of the machinery to it, the general usage of the country in similar cases, and any other facts bearing on the issue. These general principles are also stated and form the basis of the opinion of the Supreme Court of the United States in the very important case of *Kansas* v. *Colorado,* 206 U. S., 46, 51 L. Ed., 956.

There was testimony in this case tending to show that the defendant's enterprise was projected and the dam constructed with the view of using, not only the ordinary current of the stream, but also of storing up the water which ran into its pond for the time during the day and the week when the mill was not running, as well as the excess of water which comes in time of freshets. It is, of course, true, as defendant's counsel contends, that the defendant could not let off into the channel any more water than would naturally have flowed into it, if there had been no dam, but it was not impossible for defendant to combine in storage

the freshet water and the water which ran into the pond while the mill was not in operation, and be thus enabled to discharge such a volume of water as to make a stream for twelve hours of every work day, considerably larger than the Tiger River would be in its natural state. On the question whether the plaintiff has in fact greatly increased the ordinary flow of the stream by storing up freshet water, and whether the increase was the result of a reasonable or unreasonable use of the water by the defendant, there was much testimony on both sides. The jury passed upon it and this Court has no power to review their finding.

In order to make good his charge that the defendant at times, in operating its machinery, let out water far beyond the natural flow of the stream, the plaintiff undertook to prove by George E. Ladshaw, an engineer, that on a certain Saturday the water in the pond was lowered twelve feet by the operation of the plaintiff's machinery. This witness, after testifying to the water being lowered twelve feet, admitted that he was not there at the time, and testified entirely from the statements of others to him. Defendant's counsel moved to strike out his testimony on this point; and the motion was refused on the ground that the witness was testifying as an expert. It seems clear that this was error, but we cannot think it could have had any influence on the verdict. The jury could not have failed to understand that the witness knew nothing of the matter he undertook to state, and, therefore, they could hardly have received his statement as a fact. If the statement had any effect, it was more likely to weaken the jury's faith in the accuracy of other testimony of the witness quite important to the plaintiff.

The exceptions to the charge of the Circuit Judge have no substantial foundation. The charge throughout was to the effect that the defendant could use the stream and increase the flow in any way it saw fit, provided only, such use did not result in unreasonably increasing the flow to plaintiff's injury. Not only was the law

so stated in the general charge, but all the requests of the defendant, in which the law was accurately laid down, were also given to the jury. We can find no error which would justify the Court in disturbing the verdict of the jury.

It remains to consider the exceptions to the order of injunction. It is obvious from the whole evidence in the case, that the issue was as to the right of the defendant to use the stream just as it had used it from the time the dam was made, and there can be no doubt that if there was any trespass it was a continuing one. Hence there is no foundation for the position that the injunction should not have been granted, because the verdict of the jury was consistent with the conclusion that the trespass was only a temporary invasion of the plaintiff's right.

The next point is much more serious. The first cause of action is out of the case by a nonsuit to which plaintiff consented. The second cause of action is peculiar in this, that, after the setting forth of the facts complained of, which are alleged as a continuing trespass, it is alleged that by the aforesaid acts and conduct of defendant, plaintiff has been *and will be damaged* in the sum of five thousand dollars. It is elementary that, except in special cases provided by the Constitution, one person cannot take the property of another without his consent, or continually trespass upon it and compel the owner to accept payment of money in satisfaction. So the owner whose property is subjected to a continuous trespass may have damages up to the time of trial, and also an injunction against a continuance of the wrong. But, obviously, when he elects to take damages for the anticipated future trespass, he cannot have compensation by the recovery of damages, and at the same time an injunction to restrain the trespass. Here, as we have seen, on the face of the complaint, the plaintiff seeks to recover damages for the injury to be done in the future as well as that already done by the

36—81

defendant's method of using the stream. For this reason, if nothing more appeared, the verdict would be held to cover all future damages, and the injunction could not issue.

But it seems this was not the view taken in the argument of counsel, for the following statement appears in the case: "Mr. Haynsworth, in addressing the jury, stated to them that if they should render a verdict for the plaintiff, then plaintiff's attorneys would apply to his Honor, the presiding Judge, for an order to lower the dam, and, turning to Mr. Wilson, asked him if that were not true, to which Mr. Wilson replied, that plaintiff would not ask to have the dam lowered, but would ask for an order which would cause the Victor Mill wheel to be taken out." With these statements of counsel before the jury, it cannot be fairly said the verdict was intended to cover future as well as past damages.

No argument has been adduced to show that the limit beyond which the defendant was enjoined by the Circuit decree backing water in the branch on plaintiff's land was arbitrarily fixed. Under the testimony and the verdict the limit seems reasonable.

There is, however, a fact appearing beyond all dispute from the evidence, which requires modification of the order of injunction. It was shown beyond all controversy that the bed of Tiger River, as it flows by the land of plaintiff, has been raised to a very considerable extent by sand deposited therein by the great flood of 1903. The evidence shows, further, there is strong reason to hope the cleaning out of this sand would so lower the bed of the river that the defendant could use the water of the river just as it is now using it without backing water beyond the limit fixed by the Circuit Court. Section 1466 of Civil Code contemplates that all landowners shall clean out all streams upon and adjacent to their lands at least twice a year. We do not deem it necessary to decide whether, under the statute, the plaintiff is bound to clear out Tiger River, because the defendant waiving any claim of duty on the part of the plaintiff formally requested of

him in writing permission to clear out the river at its own expense. To this request the plaintiff made no response.

Though the defendant, in good faith, has erected a dam of great value, it cannot use it so as to impair any right of the plaintiff. Nevertheless, the parties are in the court of equity, and the Court will not allow the plaintiff churlishly and unreasonably to keep in the river the sand deposited by the great flood of 1903, and thus restrict the use which the plaintiff would otherwise be entitled to make of the stream. As a condition of the order of injunction, the plaintiff must consent that the defendant clean out the bed of the river through his lands.

The judgment of this Court is, that the order of injunction made by the Circuit Court be modified so as to make it conditional on the plaintiff notifying defendant within fifteen days after the filing of the remittitur in the Circuit Court, of his consent that the defendant may clean out the bed of the river through his lands and that in all other respects the judgment of the Circuit Court be affirmed.

November 16, 1908. PER CURIAM. Upon careful consideration of the petition for rehearing, we are unable to discover any material question of fact or principle of law that has been overlooked or disregarded, and the petition is, therefore, dismissed.

We wish, however, to remove any impression that the Court intended to adjudge that the proposition made by defendant and rejected by plaintiff before the suit was brought had bound defendant to assume the burden of clearing out the Tiger River through the lands of the plaintiff. The Court adjudged nothing on this point, except that the plaintiff could not have an injunction without consenting that defendant might clean out the stream if it so desired. The Civil Code, secs. 1465 to 1468, lays upon the commissioners of health and drainage the duty of enforcing the obligation of landowners to clean out streams adjacent to their lands. It is the duty of that

board, and not of the Court, to decide, in the first instance, whether the plaintiff has failed to perform any duty imposed on him by those sections, and also to take the necessary steps to enforce compliance with the statute. The order making the injunction conditional on plaintiff's consenting that defendant may clean out the stream does not require defendant to clean it out, nor does it in any wise prejudice or affect any right defendant may have to apply to the commissioners of health and drainage to compel plaintiff to clean out any portion of Tiger River at his own expense.