7437

## WILLIAMS v. HAILE GOLD MINING CO.

1. EVIDENCE—EASEMENT.—The record of a case of a third party against the present defendant is not competent to show an easement in favor of the defendant against the present plaintiff to use the stream in question, the other plaintiff and this one not claiming from a common source.

2. ISSUES.—Party failing to submit requests as to form of issues to be submitted out of chancery to jury cannot complain on appeal of their form.

3. EASEMENT—PRESCRIPTION.—To acquire an easement to use a stream by prescription it must have been used in substantially the same way for twenty years, which does not begin to run until some injury is done which would support an action.

4. RENTAL VALUE—USE OF LAND—REAL PROPERTY—CHARGE.—There being practically no difference between the rental value of land and the value of the use of it, an instruction that if you find for plaintiff you may find the value of the use of the land is not error.

5. NUISANCE—INJUNCTION.—Where the existence of a nuisance has been established by the verdict of a jury, the party injured is entitled, as a matter of right, to have its continuance enjoined.

1—85

2 WILLIAMS v. GOLD MINING CO.

6. IBID.—IBID.—In considering whether to grant or refuse an injunction to abate a nuisance found, the Court cannot consider the balance of convenience or of advantage or disadvantage to the plaintiff or defendant and the public at large by its continuance.

7. NUISANCE.—On petition for rehearing it is held the statement in the opinion that after the installation of the "chlorinating process" practically all the "tailings" were affected by that process is substantially correct under the evidence.

8. INJUNCTION granted herein on circuit held to apply to the "chlorinating process."

9. IBID.—Right to injunction against threatened, repeated or continued injury to property stated.

State v. Water Power Co., 82 S. C., 181, distinguished from this.

10. REHEARING refused.

Before GAGE, J., Kershaw, December, 1908. Affirmed.

Action by Emma E. Williams against Haile Gold Mining Company Co. From judgment for plaintiff, defendant appeals.

*Mr. E. D. Blakeney,* for appellant, cites: *Former judgment of easement competent:* 46 S. C., 43. *Injunction indefinite:* 80 S. C., 47. *Consideration of injury to public:* 81 S. C., 554; 49 S. C., 95. *Rental value is measure of damages: Maner* v. *Wilson,* 16 S. C., *Rabb* v. *Patterson,* 42 S. C.; 21 Ency., 727; 49 S. C., 95.

*Mr. J. Harry Foster* and *M. L. Smith,* contra. *Mr. Foster* cites: *Record of another case not competent:* 46 S. C., 43; 73 S. C., 545. *Issues properly sent to jury:* Code of Proc., 274, 275, 288; 17 S. C., 34; 72 S. C., 576; 35 S. C., 421; 27 S. C., 418; 56 S. C., 303; 56 S. C., 303; 33 S. C., 399; 79 S. C., 420; 43 S. C., 264; 55 S. C., 276; 16 S. C., 70; 14 S. C., 272. *Legal issues in equity cases must be tried by jury:* 42 S. C., 92; 80 S. C., 263, 260; 52 S. C., 237; 71 S. C., 282; 60 S. C., 559; 76 S. C., 316; 52 S. C., 396; 36 S. C., 559; 63 S. C., 38; 19 S. C., 290; 9 S. C., 282; 42 S. C.,

93; 24 S. C., 44; 49 S. C., 94; 72 S. C., 270. *Measure of damages for continuing nuisance:* Hale on Dam., 361; Suth. on Dam., sec. 1039; Joyce on Nuis., secs. 40, 41; 88 Am. St. R., 804; 7 Am. St. R., 473. *When prescription begins:* 39 Am. Dec., 221; Jones on Eas., sec. 165; 14 N. J. Eq., 335; 84 Am. Dec., 740; Joyce on Nui., sec. 516; 39 Am. Dec., 221. *Adverse use:* 71 S. C., 350; Jones on Eas., secs. 269, 165; 5 L. R. A., 209; 87 Am. St. R., 71; 69 Am. St. R., 385; 33 Am. St. R., 536. *Permissive use:* 68 Am. St. R., 692; 96 Am. St. R., 333; Jones on Eas., sec. 179; 39 N. E. 93; 117 Ill., 532; 3 McC., 131; 1 McC., 67; 17 S. C., 137. *No easement to operate chlorinating process:* 143 Ill., 425; Angell on Watercourses, 381, 389; Joyce on Nui., sec. 56; 5 L. R. A., 95; 41 Am. Dec., 532; 55 N. Y., 275; Wash. Eas. and Ser., 379; Black's Pom. on Water Rights, 132; 66 Am. St. R., 123; 114 Am. St. R., 328; 113 Am. St. R., 349; 95 Am. St. R., 315; 10 Ency., 430; 27 Am. R., 35; Jones on Eas., sec. 828; 22 Ency., 1215-16; 40 L. R. A., 750; 33 L. R. A., 294; Joyce on Nui., sec. 57; Angell on Watercourses, 390; Joyce on Eas., sec. 290-2. *Rights to injunction:* 69 S. C., 159; 75 S. C., 222; 42 S. C., 101; 51 S. C., 234; 54 S. C., 457, 435; 62 S. C., 196; 67 S. C., 84; 54 S. C., 435; 60 S. C., 391; 60 S. C., 568; 82 S. C. 193; 60 S. C., 391; 31 L. R. A., 711; 10 S. C., 476; 54 S. C., 430; 60 S. C., 570; 63 Am. St. R., 532; 86 Am. St. R., 453; 71 Am. St. R., 159; 49 S. C., 135; 72 Am. St. R., 613; 103 Am. St. R., 80; Wood on Nui., 1151; 60 N. E., 290; 99 Am. St. R., 727; 6 Pom. Eq. Jur., sec. 562; 5 Id., secs. 516, 496; High on Inj., secs. 740, 721, 739, 741; 91 Am. St. R., 46; 147 Col., 715; 80 S. C., 47; 42 S. C., 410; 72 Am. St. R., 613; 5 L. R. A., 486; 21 Am. St. R., 423; 4 Suth. on Dam., sec. 1036; 86 Am. St. R., 441; 85 Am. St. R., 948. *Public balance:* 97 Am. D., 657; 9 Sane, 411; 26 Am. St. R., 340; 25 Am. St. R., 601; 7 Am. D., 241; 49 S. C., 135; 80 S. C., 47; 82 S. C., 194; 25 At., 125; 81 S. C., 561; 6 Am. St. R., 366; 97 Am. D., 657; 5 Pom. Eq. Jur. secs. 530, 531; 6 Id., sec. 561; 160 Pa., St.,

4 S. C. 4 WILLIAMS *v.* GOLD MINING CO.

209; 15 Col., 271; 72 S. C., 95; 56 L. R. A., 899; Joyce on Nui., secs. 483, 486; 124 Id., 744; 13 N. E., 194; 41 Am. St. R., 370; 42 Am. St. R., 534; 45 Am. D., 181. *Public balance theory applies only to quasi corporations:* 83 Am. St. R., 642; 32 L. R. A., 570; 43 Id., 717; 10 Id., 176. *Public use:* 71 S. C., 486; 23 Am. D., 756; 99 Am. St. R., 858; 24 Id., 564; 99 Id., 967; 96 N. Y., 42; 31 Am. D., 313; 31 Am. St. R., 501.

The opinion in this case was filed on November 23, 1909, but held up on petition for rehearing until

February 17, 1910. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. About the year 1879, the defendant engaged in gold mining on a stream which flows through plaintiff's lands below. At first the ore was reduced by stamp mills, some four or five years later by crushing or roller mills, the tailings from which were carried into the stream. About the year 1888, the defendant installed what is known as the "chlorination process," which consists in treating the finely pulverized ore with chlorine, resulting from the chemical action of sulphuric acid on chloride of lime. The tailings from this process were also discharged into the stream.

When the stream overflows, this refuse matter is deposited on plaintiff's lands lying thereon, and has proved to be so injurious and destructive to plant life that plaintiff for nearly ten years has had to abandon the cultivation of the lands so affected. This action was brought to recover damages for the alleged nuisance, and to enjoin the continuance thereof.

The defendant interposed the following defenses: (1) A general denial; (2) the statute of limitations; (3) a prescriptive right to discharge the tailings from its mills into the stream; and (4) as against the equitable relief sought: 1st, that the plaintiff has an adequate remedy at law by

action for damages; 2d, the balance of convenience, or advantage to the defendant and the public; and 3d, *laches* of the plaintiff. The presiding Judge submitted to the jury the following issues, which were answered by the verdict of the jury as appears by the answers after each: "Do the acts of the mining company, detailed in the complaint and testified to by the witnesses, constitute a nuisance? A. Yes. Has the mining company used the mine branch in the way detailed in the pleadings and testified to by the witnesses, and in substantially the same way for full twenty years before May 1, 1907, continuously and adversely to the right of the plaintiff? A. No. What was the use of the thirty acres of land described in the complaint, or so much thereof as the mining company rendered unfit for use, if any, worth for the aggregate of six years next before May, 1907? A. $1,262.50 we find for the plaintiff."

Thereafter his Honor refused a motion by defendant to set aside the verdict, and granted plaintiff's motion for "injunction to stop the nuisance complained of and now found to exist."

The first exception imputes error to the Court in excluding the record in the case of *W. T. Jones et al.* v. *Haile Gold Mining Company,* which was offered as evidence of the establishment of an easement in favor of defendant for the use of the stream in the manner complained of against the owner of lands situated on the same stream below the lands of the plaintiff. The defendant contended that the record should have been admitted under the authority of *McDaniel* v. *Walker,* 46 S. C., 43, 24 S. E., 378. The record was properly excluded. In *McDaniel* v. *Walker* the parties proved title from a common source, and were therefore privies in estate. Here no privity whatever appears. The record offered was therefor *res inter alios acta.*

The next question is whether his Honor erred in not framing the issues submitted to the jury, so that the findings

would distinguish between the use of the stream for the discharge of the tailings from its mills before the installation of the "chlorination process," and the use thereof afterwards. In the first place, it does not appear that any request was made by the defendant that the issues should be so submitted, which would be sufficient to dispose of this ground of appeal. But, aside from that, it appears that the stream was used for the discharge of the tailings from the mills, not treated by the "chlorination process," for only about ten years, from 1879 to 1888, or 1889—a time too short by ten years to acquire a prescriptive right to such use of the steam— and that, after the installation of the "chlorination process," practically all the tailings were affected by that process. To acquire an easement by prescription, it must have been used in substantially the same way for the full period of twenty years, and adversely to the rights of the owner. The time does not begin to run until there is some injury done which would support an action. The plaintiff's testimony was to the effect that no injury resulted to her land from the use of the stream by defendant before the installation of the "chlorination process." Washb. Eas., 4 Ed., 150, 155, 171.

There is practically no difference between the rental value of land and the value of the use of the land. We do not see how defendant could have been prejudiced by his Honor's charging the jury that the plaintiff was entitled to recover, if at all, the value of the use of the land for six years prior to the commencement of the action.

It has been too frequently held by this Court to require further discussion that, when the existence of a nuisance has been established by the verdict of a jury, the party injured is entitled, as a matter of right, to an injunction to prevent its continuance. *Threatt* v. *Mining Co.,* 49 S. C., 95, 26 S. E., 970; *Mason* v. *Apalache Mills.* 81 S. C., 554, 62 S. E., 399, 871.

Whatever may be the doctrine in other States, under the provisions of the Constitution of this State, that private property shall not be taken for private use without the consent of the owner, the Court could not have considered, in deciding whether to grant or refuse the injunction, the question raised by the defendant as to the balance of convenience, or of advantage or disadvantage to the plaintiff and defendant and the public at large, for the defendant's use of the stream. That question would be pertinent only in an application addressed to the Legislature to give such corporations the power of condemnation. *Boyd* v. *Granite Co.,* 66 S. C., 433, 45 S. E., 10.

Judgment affirmed.

February 17, 1910. PER CURIAM. The first ground upon which a rehearing is asked for is: That the Court overlooked the undisputed facts in the statement that "after the installation of the chlorination process, practically all the tailings were affected by that process," the fact being, as contended by appellant, that, after the installation of that process, the defendant discharged into the stream the natural tailings from its stamps, as it had done as far back as 1879; and that, after the installation of that process, only from one-twelfth to one-fifteeenth of the natural tailings from the stamps have been arrested and treated by that process.

The undisputed evidence is that, after the installation of the chlorination process, practically all of the crushed ore was subjected to a mechanical process, which separated from it practically all the sulphides contained therein. These sulphides, contained in the concentrates, were then carried to the chlorination mill and, after being roasted, were subjected to the chemical process of chlorination to extract the gold. Therefore, the tailings from the stamps contained practically no sulphides, and were not of the same charac-

ter as had been previously discharged. The testimony was conflicting as to whether there was any damage done to plaintiff's lands prior to the installation of the chlorination process. The plaintiff's witnesses generally testified that no appreciable damage was done until after the installation of that process, while some of the defendant's witnesses testified that the damage began before its installation.

There was no dispute, however, upon the point that whatever damage was done was caused by the sulphides contained in the tailings. The defendant so contended in evidence at the trial, and so states in its petition for rehearing.

Inasmuch as the sulphides are admittedly the only deleterious element in the tailings, and inasmuch as the undisputed evidence shows that practically all the sulphides were separated from the ore and subjected to the process of chlorination, the statement that, after the installation of that process practically all the tailings were affected by that process, was, from a practical view of the case, substantially correct, for the deleterious element in the tailings were uppermost in the mind of the Court.

The next ground taken is that the Circuit decree does not clearly define the scope of the injunction which is allowed, in that it is not certain, from the language of the decree, whether the defendant is enjoined from discharging into the stream only the tailings from its chlorination mill, or whether it is also enjoined from discharging therein the tailings from its stamps, which have not been subjected to the chlorination process.

It will be noticed that this Court, in its opinion, quoted the language of the Circuit decree, granting plaintiff's motion for "injunction to stop the nuisance complained of and now found to exist." These words were used by the Circuit Judge in stating his conclusion, but he had previously said: "There is no question but that the defendant has used the stream in its mining operation for more than twenty

years, but the sharp issue was made that within recent years, that of the statutory period, the defendant installed what the witnesses called a chlorinating process, which process is ruinous to vegetable life. On that issue the jury found for the plaintiff." This language of the Circuit decree, in view of the fact that the record shows that the real contest in the Circuit Court was as to the injurious effects of the tailings from the chlorination process, must be construed as enjoining only the discharge from the chlorination mill; and the questions whether the tailings which were not subjected to the chlorinating process were or were not injurious to the plaintiff's land, and whether the defendant has acquired a prescriptive right to discharge such tailings into the stream are left open.

The appellant further contends that, in holding that when the existence of a nuisance has been established by the verdict of a jury, the party injured is entitled, as a matter of right, to an injunction to prevent its continuance, the Court overlooked the principles announced in *State v. Water Power Co.*, 82 S. C., 181. That case was different from this, in that that it was an action by the State to enjoin the obstruction of a navigable stream, for which there could be no way of estimating damages to the public, and relief could be obtained only by injunction. But, in that case, the principle announced in this case was recognized. At page 193, the Court said: "It is well established that an individual has a right to injunction against threatened, repeated, or continued injury to his property rights." And, again, on page 194, "The right of the State and the proposed violation by the defendants of that right, being perfectly clear, the Court cannot refuse to enforce the State's right by enjoining the defendant's proposed obstruction on the ground that the right of navigation of the Columbia Canal may be of small value in comparison with the great value to the city of Columbia of the obstruction it proposes

to erect.   The Court's discretion is not broad enough to permit it to refuse to protect either private or public property or rights, because the invasion of such property or the violation of such right would be of benefit to an individual or to a portion of the public.   *Mason* v. *Apalache Mills*, 81 S. C., 561, 62 S. E., 399."   The principle announced in the opinion herein is not only sustained by the cases cited in the opinion, but by numerous others.   Some of these are: *Kennerty* v. *Etiwan Phosphate Co.*, 17 S. C., 411; *Simonds* v. *Haithcock*, 18 S. C., 604; *McClellan* v. *Taylor*, 54 S. C., 430, 32 S. E., 527; *Ragsdale* v. *Southern Ry.*, 60 S. C., 381, 38 S. E., 609.

To allow the defendant to say that, because it has injured the lands of the plaintiff to the extent of having completely destroyed their usefulness for agricultural purposes, and because the plaintiff has recovered a judgment for full damages therefor up to the date of the verdict, it should not be enjoined from further trespassing upon the plaintiff's rights, would, in effect, allow the defendant to take the property of the plaintiff for its own use, without the plaintiff's consent, in violation of the inhibition of the Constitution, that private property shall not be taken for private use, without the consent of the owner.

Observation and experience teach us that nature is a wonderful restorer, and it is altogether probable that, in the course of years, the plaintiff's lands, which have been so injured as to be thought by some of the witnesses to be ruined, will be restored to fertility by the processes of nature.   But, be that as it may, they belong to the plaintiff, and the defendant has no right to continue its trespass thereon.   The plaintiff has the right to have the waters of the stream flow through her land unpolluted, so that the cattle in her pasture will drink thereof, and the testimony tends to show that stock will not drink of the water when polluted by the tailings in question.

For these reasons the petition for a rehearing should be refused, the injunction allowed by the Circuit Court being limited as therein intended and as hereinbefore indicated.

MR. CHIEF JUSTICE JONES *did not sit in this case.*