MARTIN v. SEABOARD AIR LINE RY.

1. EVIDENCE.—A party has no *right* to have the Court rule out evidence in support of irrelevant allegations allowed to remain in a pleading, but the Court has the *power* to exclude it.

2. CHARGE.—Failure of Judge to instruct jury not to consider evidence admitted on irrelevant allegations not error, in absence of request to that effect.

3. DAMAGES.—Rule stated for ascertaining damages flowing from breach of contract, when the default is of such a nature as to warrant the plaintiff in abandoning a going business.

Before F. B. GARY, special Judge, Lexington, November, 1903.    Affirmed.

Action by Thomas L. Martin against Seaboard Air Line Ry. From judgment for plaintiff, defendant appeals.

*Messrs. Lyles & McMahan* and *Efird & Dreher,* for appellant, cite: *Testimony not tending to make out a cause of action should be excluded:* Code of Proc., 181; 61 S. C., 336; 60 S. C., 65. *Court may direct verdict:* 60 S. C., 401; 20 S. C., 270; 42 S. C., 30; 31 S. E. R., 797; 6 Ency. P. & P., 675. *As to measure of damages for breach of contract:* 66 S. C., 75; 25 S. C., 70; 60 S. C., 254; 3 McC., 503; 2 N. & McC., 518; 8 Ency., 2 ed., 609, 612, 617, 619. *Refusal of new trial on erroneous view of the law is appealable:* 23 S. C., 231; 21 S. C., 559.

*Messrs. G. T. Graham* and *A. D. Martin,* contra, cite: *Evidence in support of allegations in pleadings is competent:* 47 S. E., 140; 43 S. C., 221; 25 S. E., 59. *As to proof of damages:* 9 S. E., 734; 1 Suth. on Dam., 763; 5 Ency., 8, 49; 4 S. Ct., 85; 9 Fed., 222, 43 S. E., 388. *There being evidence to sustain verdict, new trial properly refused:* 1 S. E., 414; 35 S. C., 572; 37 S. C., 102; 41 S. C., 153, 388; 32 S. E., 567; 23 S. E., 515; 44 S. C., 484; 31 S. E., 224; 8 S. C., 173. *New trial should not be granted if there be two verdicts same way:* 2 N. & McC., *184; 2 Bay, 133.

September 29, 1904.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    This is an action to recover damages for breach of contract.    The plaintiff was the owner of a brick mill at Arthur's Lake, in Lexington County, about one mile from Dixiana, a station on defendant's railroad. Wishing to move his mill to the railroad in order to save the expense of hauling brick, plaintiff contracted with the de-

fendant railway company for a spur track at a point on the railroad about three-fourths of a mile from Dixiana. The contract provided as a condition precedent to the construction of the spur that plaintiff should furnish the switch ties, grade the road-bed and pay $60 in cash. On the faith of the contract the plaintiff moved his plant to the new location at considerable expense. The spur was not built, and after waiting some time plaintiff moved his mill back to Arthur's Lake, and sued for damages. The defendant admitted the $60 had been paid and not returned, but attempted to justify its failure to build the spur track by proving plaintiff had not furnished cross-ties suitable for the work or made an adequate road-bed.

The complaint sets up these items of damage:

| | | |
|---|---:|---:|
| Expense of moving brick plant from Arthur's Lake and back........................ | $550 | 00 |
| Cross-ties, grading and $60 cash, as required by contract ............................ | 100 | 00 |
| Loss on kiln of brick for lack of spur track—difference between $250, value on railroad and $97.50, price received................... | 152 | 50 |
| Rental value of plant while idle for six weeks, based on anticipated profits............... | 2,400 | 00 |
| Total .................................. | $3,202 | 50 |

Undoubtedly the allegations as to several of these items would have been stricken out of the complaint if a motion to that end had been made. But as no such motion was made, the defendant's first exception, charging reversible error in the admission of testimony concerning them, cannot be sustained. *Ragsdale* v. *Railway Co.,* 60 S. C., 381, 38 S. E., 609; *Dent* v. *R. R.,* 61 S. C., 329, 39 S. E., 527. The Code of Procedure provides opportunity for the parties to a suit to have the real issues presented in distinct and clear-cut form by a motion to strike out irrelevant matter. If they choose not to use this means, complaint that the Circuit Judge failed, in the hearing of the

testimony, to disentangle the confusion of relevant and irrelevant matter, will not be heeded. Justice does not in such circumstances require that litigation should be prolonged by new trials. On the other hand, due administration of the law and dispatch of public business are promoted by encouraging the use of the proper means to eliminate all irrelevant matter before the trial begins. It is upon these reasons that the cases above cited rest. It may be important to remark in this connection, however, that while a *party* cannot complain of the admission of testimony as to irrelevant allegations he has allowed to remain in the complaint, this Court has never held that the Circuit Court has not the right to exclude such testimony. In all the cases on the subject, the refusal to grant a new trial was placed on the ground that the *appellant* having failed to move to strike out irrelevant allegations, had no *right* to have the testimony as to such allegations excluded. The proposition that a court is obliged to receive evidence which does not tend to establish any fact from which, under the pleadings, a legal conclusion would result, merely because the immediate litigants are not in a position to complain, cannot for a moment be entertained. The Court is vested with power to exclude such evidence in the interests of other litigants and of the public. Those who have a cause on trial are entitled to time and opportunity to present the evidence and argument which bear upon the real issue, but when either party attempts to go beyond this, it is within the power of the trial Judge, and a duty he owes to others having business in the Court and to the public, either upon the objections of the other party, or of his own motion, to require adherence to the true controversy.

The failure of the Circuit Judge to instruct the jury not to consider the objectionable items of damage cannot avail the defendant, because no specific request upon the subject was submitted and refused. The first exception is overruled.

At the close of plaintiff's testimony, the defendant requested the Court to instruct the jury to find a verdict for

the plaintiff for $16 only, the cost of hauling to Dixiana all the brick plaintiff actually shipped.   In his second exception, defendant submits this request was erroneously refused. Appellant's argument is that the sole advantage plaintiff would have derived from the spur track was the saving of the cost of hauling the brick to the railroad, and hence his damage was limited to the cost of hauling actually paid. Even if the business at the new location had been abandoned for some reason not connected with defendant's breach of contract, such, for example, as the destruction of the machinery by explosion, this argument still would not be conclusive; for the advantage plaintiff would have derived from the performance of the contract would have been the saving of the cost of hauling to the railroad all the brick manufactured for market at the new location, and not merely of those actually hauled.   In that event, the verdict should have been for $50, the cost of hauling the 50,000 brick actually manufactured, and not $16, the cost of hauling those actually shipped.   But this was not the case; the plaintiff treated the breach as final and conclusive, and on account of the breach, as he testified, moved his mill away from the location at which he would have been benefited by the building of the spur track.   It is always a question of fact for the jury to decide whether, in view of the circumstances of the particular case, the breach should be regarded final and conclusive, justifying the injured party in treating the contract at an end, or only a temporary delay in performance, or other default not vital to the interests involved.   *Remelee* v. *Hall,* 76 Am. Dec., 140 (Vt.)

If the plaintiff had continued business at the new location, notwithstanding defendant's alleged default, and the evidence had led the jury to conclude there was not a final and complete breach, but only a postponement of performance resulting in no permanent and continuing loss, then the recovery should have been for only $16, the cost of hauling the brick actually shipped.   But if in that case the evidence had led to the conclusion that the breach was final and com-

plete, the proper verdict would have been not only for hauling up to the time of the trial, but for the prospective future expense which would have been incurred on that account.    3 Parsons on Contracts, 200; 7 A. & E. Ency. Law, 133.    Practically, this item of future expense, in such case, would be expressed by the jury's estimate of the difference between the actual value of the going business with the burden of hauling the brick on it, and its value freed from that expense.    The difficulty of making the true estimate does not affect the right to recover.    As said in the strong opinion in *Blagen* v. *Thompson,* 18 L. R. A., 315 (Ore.) : "The rule that damages which are uncertain or contingent cannot be recovered, does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all.    It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncertain in amount."    See, also, 8 A. & E. Ency. Law, 614; *Petrie* v. *R. R. Co.,* 29 S. C., 303, 7 S. E., 515.

The same principles apply where, as in this case, the business has not been continued but abandoned, though the method of estimating the damage is necessarily different. When the business has been discontinued on account of the breach, there being no business in existence, the recovery cannot be based on the additional expense of carrying it on, or the decrease of its value growing out of the breach. There is no damage to the business, for there is no business, but obviously it does not follow there is no loss to its owner for which the defaulting party is liable.    When an enterprise is undertaken by one party on the faith of a contract with another who defaults and in consequence the enterprise is abandoned, the first question to be decided in ascertaining the measure of damages, is whether the circumstances justified the conclusion that there had been a final and complete breach vital to the enterprise and warranting its abandon-

ment. If so, the measure of damages should not be less than the actual expense and loss incurred on the faith of the contract. If, on the other hand, the evidence should indicate only a postponement of performance or other partial breach not vital to the enterprise, and hence not warranting its abandonment, the recovery should be limited to the additional expense or loss, if any, consequent on the default, incurred in the prosecution of the enterprise so far as it had gone. The default not being so serious as to warrant the abandonment of the enterprise, expenses incurred in launching it could not be recovered, but only compensation for the loss of the advantage to the going business contemplated by the contract, as far as it had been prosecuted. The defendant, therefore, had the right to have the jury instructed to the effect that if the circumstances appearing from the evidence did not warrant the plaintiff in regarding the contract as finally breached and the success of the enterprise thereby vitally affected but, on the contrary, the evidence only indicated delay in performance which only temporarily postponed the benefits to come from the contract, and a default not vital to the enterprise, then he could not recover more than the additional expense which resulted from the breach, which was $50, the cost of hauling the bricks actually manufactured to the railroad station. The defendant's request being for an unqualified direction to the jury to find a verdict for $16 only, it could not be granted, because the amount could not have been less than $50, and because, in granting it, the Circuit Judge would have adjudged an issue of fact upon which there was evidence for the jury to consider. In granting the request, he would have taken from the jury the question whether the plaintiff was justified in regarding the contract as finally and conclusively breached, to the vital injury of the enterprise which he had undertaken in reliance upon it. It follows the request was properly refused.

It is next insisted a new trial should be granted because the verdict of the jury was in disregard of the following instruction: "If there was a breach by the railroad in not

putting in a side track for Mr. Martin's use in shipping brick *only,* and if Mr. Martin with reasonable expense and exertion could have had the brick hauled to another point for shipment, then it was Mr. Martin's duty to do this, and the most he can recover is the additional cost of hauling to the most convenient station the brick that he actually made and sold, provided he did so haul them, unless there were other special damages foreseen and contemplated by the railroad at the time of making the contract and not to be avoided by Mr. Martin through reasonable effort and expense."

It is manifest, if the jury reached the conclusion from the evidence that Martin was justified in abandoning his enterprise on account of defendant's default, then this instruction warranted a verdict for the expenses incurred by him on the faith of the contract. *Nettles* v. *R. R. Co.,* 7 Rich., 190; 8 A. & E. Ency. Law, 673; 13 Cyc., 63. In this view, it also follows the Circuit Judge committed no error of law in refusing the motion for a new trial on the ground that the verdict might properly include as actual expenses and losses the cost of removing the plant from Arthur's Lake, the rental value of the mill for the period occupied in removing it from Arthur's Lake and re-establishing it at the railroad, and the cost of transporting the brick burned at the new location to the nearest railroad station.

If the jury reached the conclusion that the default of the defendant was such as to warrant the plaintiff in abandoning the enterprise, then the defendant was responsible for the loss of rental value which the defendant knew would necessarily be incurred in moving the mill on the faith of defendant's promise. *Lipscomb* v. *R. R. Co.,* 65 S. C., 148, 43 S. E., 388; *Harwood* ads. *Tappan,* 2 Spear, 551; *Griffin* v. *Colver,* 69 Am. Dec., 724 (N. Y.)

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.