## 8097

### MILLS v. SOUTHERN RY.

1. ON APPEAL from Circuit Court judgment in appeal from magistrate, exceptions assigning merely technical errors not affecting the merits should not be considered.

2. CARRIER.—EVIDENCE responsive to the allegations setting out special damages from delay of carrier in delivering freight is admissible, especially where the objection is not based on ground of no allegation of notice.

3. IBID.—BILL OF LADING—EVIDENCE.—OBJECTION to proof of bill of lading in magistrate court that signature of agent issuing it should be proved is too technical.

4. IBID.—FREIGHT—PUNITIVE DAMAGES.—The acts of the agent of the terminal carrier in this case in not delivering freight for several weeks after arrival at destination because he could not ascertain from the connecting carrier the rate for a very short haul tend to show a reckless or gross disregard of plaintiff's rights and support a finding for punitive damages.

   MR. JUSTICE WOODS *thinks the damages should be limited to the amount of what he would have earned as a barber, less the amount he would have actually earned at something else, during the time the freight was held at the depot.*

5. ON APPEAL from Circuit judgment in appeal from magistrate, this Court will not consider exceptions involving questions of fact nor points not raised before the magistrate.

Before MEMMINGER, J., Aiken, October, 1910. Affirmed.

Action by Julius Mills against the Southern Railway Company in court of Magistrate S. S. Lee. From Circuit order affirming judgment of magistrate defendant appeals on the following exceptions:

1. "That the presiding Judge erred in not sustaining the defendant's first exception to the action of the magistrate's court, which was as follows: 'That his honor, the presiding magistrate, erred in permitting plaintiff's witness, John A. Knox, to testify against the objection of defendant's counsel as to what profits plaintiff could have or might have made in his barber shop during the period of the alleged

delay in the delivery of the goods in question.   It being submitted that said testimony was inadmissible as being testimony both as to special damages and also as to speculative damages; it being submitted that as there was no testimony showing any notice to defendant of special circumstances surrounding the shipment in question, that then no testimony as to special damages was admissible, and that in no case was testimony as to speculative damages admissible.'

"It is submitted that said exceptions should have been sustained for the reason that it was error to admit the testimony complained of, the same being simply based upon special damages and speculative damages and was inadmissible for the reason that no notice was given to the defendant company at the time of the shipment in question or indeed at any time thereafter of the special circumstances on which said damages was based, and further, that this is an action in which speculative damages are not properly recoverable under the law of this State.

2. "That his Honor, the presiding Judge, erred in not sustaining the defendant's second exception to the action of the magistrate's court, which was as follows: 'That his honor, the presiding magistrate, erred in permitting the plaintiff and witness Knox to testify as to the regulations and scale of wages of the Barbers' Union; it being submitted that said testimony was irrelevant and calculated to inject into the case an improper basis for calculating plaintiff's special and speculative damages, it not appearing that plaintiff was going to work for any Barbers' Union, but it appearing to the contrary that he intended to embark in business for himself.'

"It is submitted that his Honor erred in not sustaining this exception for the reason that the testimony complained of was not admissible as the same sought to inject into the case an improper basis for calculating the plaintiff's alleged damages.        ...

3. "It is submitted that his Honor, the presiding Judge, erred in not sustaining the defendant's third exception, which was as follows for the reason therein stated: 'That his honor erred in admitting in evidence the alleged bill of lading without having the same properly proven by the party who issued the same in St. Louis, Mo.'

4. "It is submitted that his Honor, the presiding Judge, erred in not sustaining the defendant's fourth exception, which was as follows: 'That his honor, the presiding magistrate, erred in finding any verdict for the plaintiff; it being submitted that for each of the following reasons the verdict should have been for the defendant:

"'(a) That the testimony showed that there was no negligence upon the part of the Southern Railway Company, but that the only negligence in the transaction in question was upon the part of another and independent corporation, for whose acts the defendant company was not responsible.'

"'(b) That the statute law of South Carolina makes it the duty of railroad companies to settle freight charges upon the basis of the rate stated in the bill of lading. In this case the testimony showed that no freight rate was stated in the bill of lading, and that that fact was the cause of the trouble. It is submitted the error was as much that of the consignor, who was plaintiff's agent, as of the shipping clerk, and that no duty rested upon the agent at Langley to deliver until the freight charges were tendered him, which plaintiff admitted he never did.

"'(c) That the testimony showed that plaintiff could and should have avoided all damage and loss to himself by the exercising of due diligence. That is to say, he should have entered into the proper and sensible arrangement and agreement proposed by the agent of the railroad company, by virtue of which he could have promptly gotten possession of his goods.'

"It is submitted that this exception should have been sustained for the reason that,

"(a). That the testimony showed that there was no negligence on the part of the Southern Railway Company;

"(b) That the testimony showed that the error which caused plaintiff's alleged damage in this case was as much the error of plaintiff's agent, the consignor, as that of defendant's agent, the shipping clerk;

"(c) That the testimony revealed the fact that the plaintiff could have avoided his whole damage by entering into the proper and sensible arrangements proposed by the agent of the railroad company, to wit, the depositing with him of ten ($10) dollars to cover the freight charges.

5. "It is submitted that the presiding Judge erred in not sustaining the defendant's fifth exception, which was as follows: 'That the verdict given the plaintiff for the sum of one hundred dollars was excessive in that,

"(a) There was absolutely no testimony upon which to base punitive damages; it appearing that the whole mistake was made by the agent of the Terminal Railway Association, and that his mistake was only negligence and not wilfulness, and that the agents of the Southern Railway Company did all in their power to remedy the error, and that the actual damage of plaintiff, according to his own statement, could not have been more than about twenty-two dollars, hence it is submitted that it was an error in awarding the plaintiff a larger verdict than the actual damage proved by him, which as stated was about $22.

"(b) That the testimony showed that even should it be found that the defendant was negligent or even wilful and was responsible for the damage caused, still it appeared from the testimony that the plaintiff could have mitigated said damages most materially by taking his goods out of the depot when the same were offered to him one or two days after their arrival at Langley by paying ten dollars to the agent, of the railway company to wait for an adjustment of the freight rate after the arrival of the way bill giving the rate from St. Louis. It is submitted that it was the duty of the

24—90

plaintiff even if the defendant was negligent and wilful in the matter in hand to have mitigated the damages by going into such an arrangement and taking his goods out of the depot promptly; it being submitted that such an arrangement was well founded both in law and in common sense.

"It is submitted that said exception should have been sustained for the reasons,

"(a) That there was absolutely no testimony of wilfulness and wantonness upon which to base a verdict for punitive damages;

"(b) That the testimony revealed the fact that the plaintiff should have mitigated his damage by entering into the sensible and proper arrangements proposed by the agent of the railroad company, to wit, the depositing of ten dollars with him to cover the freight charges."

*Messrs. Hendersons,* for appellant, cite: *As to evidence of speculative damages:* 81 S. C. 181. *Admission of bill of lading;* 58 S. C. 247; 78 S. C. 38; 81 S. C. 448. *Defendant not liable for negligence of its connecting carrier:* 78 S. C. 42. *Freight must be fixed by rate in bill of lading:* Act 1903, 81. *No liability arises for refusal to deliver goods without payment of freight:* 83 S. C. 455; 82 S. C. 234. *No evidence of wilfulness:* 83 S. C. 498.

*Messrs. Sawyer & Owens,* contra, oral argument.

February 20, 1912. The opinion of the Court was delivered by

Mr. Chief Justice Gary. This action was commenced in a magistrate's court, and is for damages alleged to have been sustained by the plaintiff, through the wrongful acts of the defendant.

The allegations of the complaint are as follows:

"That the plaintiff is, by trade, a barber, and desiring to engage in his trade at Langley, he rented a house at a rental

of $5.00 per month, and announced to the public, that he would open a place of business, commonly called a barber shop, on or about the first day of April, 1906, and for that purpose, he purchased an outfit for his shop, consisting of chairs and mirrors, which was delivered to the defendant, by the August Kern Barber Supply Company in the city of St. Louis, in the State of Missouri, on the 24th day of March, 1906, and reached Langley on the 3d day of April, 1906, and the defendant, through its agents and servants, wilfully, maliciously, wantonly, negligently, and in utter disregard and violation of the plaintiff's rights, failed and refused to deliver the said articles to the plaintiff, without any reason whatever, for a long space of time, in consequence of which failure to get possession of his aforesaid appliances, he was unable to open his barber shop and engage in his business, and his landlord, the Langley Manufacturing Company, in consequence of such long delay, has rented and let the barber shop to another party, and thus deprived this plaintiff of carrying on his business, because there is no other suitable house, which can be obtained in that locality; and plaintiff further alleges, that that particular place is the best and most desirable stand for the barber business in the village of Langley, averaging an income of fifteen dollars a week with one chair; by reason of all of which wilful, wanton, malicious and negligent conduct of the defendant, this plaintiff has been greatly damaged, in the sum of one hundred dollars."

The defendant denied generally, the allegations of the complaint.

The magistrate rendered judgment in favor of the plaintiff, for one hundred dollars, whereupon the defendant appealed to the Circuit Court, but the appeal was dismissed and the defendant again appealed, upon exceptions, which will be reported.

Section 368 of the Code provides that, upon hearing an appeal from an inferior court, the Circuit Court shall "give

judgment according to the justice of the case, without regard to technical errors, which do not affect the merits." Therefore, those exceptions assigning errors that are merely technical, and do not affect the merits, will be disregarded. We proceed to the consideration of the exceptions, in the light of this provision.

*First Exception:* The following statement appears in the record: "Defendant's counsel objects to any testimony, as to what the plaintiff thinks, believes, or calculates that he could have made, in his business as barber, during the alleged delay in the delivery of the freight in question, on the grounds that the same are both special and speculative damages and hence inadmissible." Special damages are recoverable, when the carrier receives notice at the time of the shipment, that the loss of the property or delay in its delivery, will result in such damages. The testimony was in response to the allegations of the complaint, and while the magistrate might have objected to proof of such damages, unless it appeared that the carrier had notice thereof at the time of shipment, the appellant had no such right. *Martin* v. *Ry.,* 70 S. C. 8, 48 S. E. 616. Furthermore, the objection to the testimony, was not based upon the ground, that the carrier did not receive notice of such damages, at the time the goods were shipped.

*Second Exception:* In the first place, there was other testimony of the witness, Knox, to which there was no objection, and, in the second place, the testimony was in response to the allegations of the complaint.

*Third Exception:* In the first place, this ground of objection is too technical, as the question arose in a magistrate's court; and in the second place, the appellant has failed to show, that there was prejudicial error.

The next question that will be considered is, whether there was any testimony tending to show, that the plaintiff was entitled to punitive damages.

The plaintiff testified as follows: "When I found that my goods were in the depot, I went to see about them, and the agent would not let me have them; said he did not have any freight bill. The agent, Mr. Gaillard, told me just a day or two before I got the goods, that I could have the goods, if I would give him ten dollars to hold. I did not give it to him, he wanted it to hold, did not tell me how much freight was due on them. I thought he had as much right to trust me as I him. I went to see about my goods two or three times a day, to see about them. I worked at carpentering in the meantime. My material stayed in there a month or more, about the last time I went to ask Mr. Gaillard about it, he said he had quit fooling with it all. I paid $9.88 on these goods, that was May 1st last. The goods came about the 9th day of April and 'twas May 1st before I got my goods, and the shop was rented at that time. While I was waiting for my goods, Mr. Corley held the key. He was holding the shop for me. Just before I got my goods out, Mr. Corley rented my shop to Mr. Knox. I had the money to pay freight all the time while I was waiting. I paid rent for the month of April, 1906, five dollars."

There was a delay from the 9th of April, until the 1st of May; the defendant knew, that the plaintiff was being greatly inconvenienced, by such delay, the defendant had knowledge of all freight charges, except those due the Terminal Railroad Association for transporting the articles of merchandise, from St. Louis City to East St. Louis, just across the Mississippi River—a very inconsiderable portion of the distance between St. Louis City and Langley, S. C.; it was the act of the defendant and not of the plaintiff, that caused the delay in the delivery of the goods—the plaintiff merely stood upon his legal rights; when the defendant realized, that it was unable to ascertain the amount of the freight charges, due the Terminal Railroad Association, it was very unreasonable for it to delay the delivery of the goods; they must have known that such freight charges,

would be almost unappreciable for so short a distance. Under these circumstances the testimony tended to show, a reckless disregard of the plaintiff's rights.

The remaining exceptions either involve questions of fact, which cannot be reviewed by this Court, or were not raised in the magistrate's court.

Judgment affirmed.

MR. JUSTICE HYDRICK, *concurring.* The character of the shipment was sufficient notice that special damages might result from its delay to admit evidence of such damages. The record shows that defendant issued the bill of lading. Therefore, the Terminal Railroad Association must be held to have been defendant's agent (*Sally* v. *Seaboard,* 76 S. C. 173), for whose failure to promptly furnish the rate on request defendant is responsible. The long delay in ascertaining the correct freight charges, after defendant's agent at Langley knew of plaintiff's situation, and that loss was daily occurring to him, because he could not get his goods is evidence of negligence so gross as to warrant an inference of indifference to the plaintiff's rights. Therefore, punitive damages were properly awarded.

MR. JUSTICE WOODS, *dissenting.* There was evidence warranting the inference by the magistrate that the defendant's freight agent was mistaken in his duty, and that he should have delivered the plaintiff's goods on payment of the freight charges of his own road when the connecting carrier, after being allowed a reasonable time, failed to respond to his demand for a statement of its charges. The magistrate's inference of negligence in this respect entitled the plaintiff to recover actual damages. As to the measure of damages, the fact that the shipment was a single barber's outfit directed to an individual was sufficient to warrant the inference that the carrier was put on notice that the outfit was probably for use by a barber and not for sale, and that

delay would injuriously affect the barber's business by causing him to lose the earnings of a barber for the period of delay. The plaintiff was therefore not precluded from the recovery of special damages to this extent by the rule laid down in *Towles and Arnett* v. *Atlantic C. L. Ry. Co.,* 83 S. C. 501, 65 S. E. 638, and other cases, that there can be no recovery for special damages without notice before shipment to the carrier of the circumstances of the plaintiff and of the special damages which would result to him from delay. But there was nothing to put the defendant on notice that the delay would cause the plaintiff to lose the opportunity to secure a particular shop, which, on account of the delay, was rented to another barber, and hence there could be no recovery for this item.

The earnings of a barber as shown by the evidence of the plaintiff were fifteen dollars per week; but the plaintiff testified that during the period of delay in the delivery of his outfit he actually earned as a laborer one dollar and twenty-five cents per day. The actual damages were thus definitely shown to be fifteen dollars per week less seven dollars and fifty cents per week earned from April 9th when the goods arrived until May 1st when they were delivered.

I am unable to discover any evidence of wilful or wanton disregard of the rights of the plaintiff. When the defendant's agent could not procure promptly the freight charges of a connecting carrier he made a careful estimate of the freight charges as ten dollars and offered to accept the sum so estimated and adjust the difference with the plaintiff when informed of the exact amount which turned out to be nine dollars and eighty-eight cents. This offer the plaintiff refused. There was no evidence whatever that the plaintiff was responsible, and it would be very harsh judgment to infer that the defendant's agent was guilty of wanton or wilful disregard of plaintiff's rights in not crediting him for the amount of the freight charges. Nor is such an inference to be drawn from the remark imputed to the agent

that "he was done fooling with it." The evidence is undisputed that he had made diligent effort to ascertain the exact freight charges and had failed on account of the negligence of a connecting carrier, and under the circumstances the remark meant nothing more than that, having exhausted his efforts he could do nothing more. ·

The judgment should in my opinion be modified by reducing the recovery to twenty-two dollars and fifty cents, the actual damages ascertained in the method above indicated.