8499

### SALLEY v. COX.

1. LANDLORD AND TENANT—CROPPER—REAL PROPERTY.—Where a cropper voluntarily abandons a crop without fault on the part of the landlord or without reasonable cause or excuse, he forfeits all interest in the crop.

MR. JUSTICE WOODS *thinks under circumstances there should be an apportionment of profits.*

2. CHARGE.—A REQUEST to charge should not be made while the Judge is delivering his charge to the jury, but should be sent up in writing before the argument begins. When other points are suggested by the argument, requests as to them may be sent up at the close of the argument. Points suggested by the charge should be sent up at the close of the charge, at which time errors or omissions in the charge should be called to the Judge's attention.

Before FRANK B. GARY, J., Charleston, April term, 1913. Reversed.

Action by B. M. Salley against H. L. Cox. Defendant appeals.

*Mr. Edwin J. Blank,* for appellant, cites: *Plaintiff was a laborer:* 20 S. C. 1. *And the principle of accounting does not apply:* 15 S. C. 82.

*Mr. Frank F. Herndon,* contra. Oral argument.

April 1, 1913. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.   Plaintiff brought this action to recover the value of his share of a cotton crop raised on defendant's land, and also the value of certain small crops, which belonged to him individually.  He alleged that defendant compelled him to leave his place in August, and refused to allow him to gather the crops, and that defendant had gathered and appropriated them to his own use.

Defendant denied that he had compelled plaintiff to leave, and alleged that, having violated the terms of the contract, plaintiff abandoned the crop and left, and he was put to the expense of raising and harvesting it, and, after deducting said expenses and plaintiff's indebtedness to him, there was nothing left of plaintiff's share.

There was sharp conflict in the testimony as to whose fault caused the breach of the contract.   Defendant's attorney requested the Court to charge: "It is incumbent upon the plaintiff to show by preponderance of evidence that he executed his part of the agreement as alleged in the complaint; and if he has failed to do so, or did not carry out and execute his part of the agreement, or voluntarily abandoned said crop, you must find for defendant."   The Court declined to charge this request, but charged, in response thereto, as follows: "If the plaintiff had a contract with the defendant and abandoned the crop, and made it necessary for the defendant to gather it, the defendant would be allowed to charge whatever it cost him to gather the crop. I will go to that extent and charge you that."

We think his Honor erred in so charging; for, in the connection in which it was given, the instruction necessarily implied that, even though plaintiff voluntarily abandoned the crop, he would be entitled to share in the surplus, after payment of all expenses of gathering it.   When a cropper voluntarily abandons a crop, without fault on the part of the landowner, he forfeits all interest therein. 12 Cyc. 981.   A moment's reflection, in which the situation of the parties to such a contract is considered at its various

stages, from the making to the completion thereof, will show that the rule announced by the Circuit Court might work great injustice to the landowner. Suppose, for instance, the cropper voluntarily abandons his crop and contract in the early spring, just after it is planted, under this ruling, the landowner would be compelled either to lose the fertilizer and seed which had been put into the ground, and, perhaps, also the use of his land and the stock and implements which he had procured and set apart for the use of the cropper, or employ other help and carry the crop to completion. Yet, if he did the latter, he would have to share the profits with the cropper whose abandonment of his crop and breach of his contract were without cause or excuse. A different rule would apply, if the abandonment was due to misfortune or to some just cause, but where it is done voluntarily and without reasonable cause or excuse, the cropper is certainly not entitled to share in the crop so abandoned.

It is but fair to the learned Judge to say that the request above quoted was improperly presented, in that it was done orally, and in the midst of the charge, and, therefore, he had no opportunity whatever to consider it. Under the circumstances, he would have been fully justified in refusing to consider it at all.

The rule of Court requires that requests to charge must be presented in writing, and before the argument begins. This was intended to give the trial Judge opportunity to consider them during the argument to the jury. The rule also provides that, at the close of the argument, such additional requests as have been suggested by the course of the argument may be presented; and it would be proper for counsel, at the close of the charge, to present such additional requests as have been suggested by the charge, and that is the proper time to call the attention of the Court to errors or omissions in the charge which counsel reasonably suppose are due to inadvertence, oversight, and, perhaps, other causes. But the circumstances would be rare, indeed, which

would warrant counsel in interrupting the Judge, while he is charging the jury for such purpose.

Reversed.

MR. JUSTICE WOODS, *dissenting.* The plaintiff, a share-cropper on the land of the defendant in 1910, brought this action, alleging that about the 17th of August, the defendant ordered him to leave the place and afterwards appropriated the entire crop to his own use. The defendant alleged: (1) "That plaintiff secretly disposed of a part of the crop, and after being warned by the defendant not to repeat the performance, plaintiff abandoned said crop and disappeared without attending to the duties he assumed by agreement, and that defendant was put to the expense of raising and harvesting the crop;" and (2) "That after deducting the costs and expenses of making and harvesting said crop, and the indebtedness of plaintiff to defendant, there was no profit to be divided; but to the contrary, defendant sustained a loss." On the issues thus made the plaintiff recovered judgment for $200, from which the defendant appeals.

The question of the rights of landowners and their croppers in their dealings with each other is interesting and important, because a large part of the lands of the State are cultivated under contracts like the contract here involved.

According to the plaintiff's testimony the agreement was that the defendant should furnish the land, the fertilizer and live stock; that the plaintiff should cultivate and gather the crop, and that the crop should be equally divided. The only difference between the parties as to the contract, was that the defendant testified that the plaintiff, in addition to cultivating and gathering the crop, was to pay $5 an acre rent. Taking the view of the contract most favorable to the appellant, it was a contract for the payment of wages in the form of a share of the crop, the plaintiff sustaining the relation to the defendant of a laborer for hire. The plain-

tiff had no right of property in the crop until it should be divided, and, therefore, could not maintain an action to recover his specific share before division, but did have the right to sue for breach of the defendant's contract to make a fair division and turn over his share of the crop. *Huff* v. *Watkins,* 15 S. C. 82; *Carpenter* v. *Strickland,* 20 S. C. 1; *Loveless* v. *Gilliam,* 70 S. C. 391, 50 S. E. 9. The action was, therefore, properly brought; and as the Circuit Judge charged, it necessarily involved an accounting between the plaintiff and the defendant as to their transactions under the contract.

The point mainly relied on to support the appeal is the refusal of the Circuit Judge to charge the following request: "It is incumbent upon the plaintiff to show by preponderance of evidence that he executed his part of agreement as alleged in the complaint; and if he failed to do so, or did not carry out and execute his part of agreement, or voluntarily abandoned said crop, they must find for defendant." After refusing the request, the Circuit Judge said to the jury: "If the plaintiff had a contract with the defendant and abandoned the crop and made it necessary for the defendant to gather it, the defendant would be allowed to charge whatever it cost him to gather the crop, I will go to that extent and charge you that; but, as I say, these are matters of everyday occurrence that are peculiarly within your power to judge of; you are called upon to do justice between man and man, and you do that and find a verdict accordingly."

The charge, I think, is well supported by both reason and authority. It is no doubt true that if a share-cropper abandon the crop, or so behave as to incur a just discharge by the landlord, at the beginning of the crop year, the breach may be so complete as to warrant the landowner in rescinding, and declaring the contract and the cropper's rights under it at an end. But on the other hand, if the crop be so advanced by the labor of the share-cropper that his labor has been of material value to the landlord, the cropper does not

forfeit all his share of the crop, but must submit to such deduction from his share as will compensate the landlord for the injury inflicted by his breach. So, on the other side, if the landlord, without good reason, refuse to furnish any land or fertilizer, and thus entirely defeat the cropper's right to cultivate the land under the contract, he could recover of the landowner one-half of 'the crop reasonably expected, less any amount the laborer earned, or by reasonable efforts might have earned, during the crop year; and if the landlord should partially fail in his contract, but not to such degree as to warrant the laborer in considering it entirely breached, the laborer could not abandon the enterprise, but would have to proceed with his work, and recover from the landowner such damages as he had suffered from the partial breach. In any such case, it is always a question of fact for the jury to decide whether under the evidence a breach of the contract should be regarded final and complete, justifying the other party in treating the contract and his obligation under it at an end, or only such partial breach as to require that the party in default suffer an abatement from the consideration he was to receive measured by the damage caused by the breach. This principle is stated and applied in *Gray* v. *Hawkins,* 1 Bay. 278; *Martin* v. *Seaboard Air Line Railway Co.,* 70 S. C. 8, 48 S. E. 616; *Godfrey* v. *Burton Lumber Co.,* 88 S. C. 132, 70 S. E. 396.

The rule has been applied as the just one in contracts between planters and overseers. As is well known, in former times overseers were usually employed for the entire year at a salary fixed for the entire year's service. The overseer's continuous service, like a share-cropper's, was important from the beginning to the end of the crop year; and his abandonment of the crop or misbehavior rendering his discharge necessary, like that of a share-cropper, often subjected the landowner to inconvenience and loss. In legal contemplation, the overseer's contract and that of the share-cropper stand on the same footing, except that the

overseer's wages were generally to be paid in money, while the share-cropper gets as wages a part of the crop. In *Byrd* v. *Boyd,* 4 McC. 246, after much consideration, the Court laid down a rule, the justice of which is made manifest by the opinion of the Court. In that case the overseer was discharged for using abusive language to his employer's daughter. Judge Huger charged the jury that, the contract being for the entire year, if the plaintiff had been properly turned away he ought to recover nothing; but if he had been turned off improperly he ought to recover the whole amount. The reasoning of Judge Johnson, in holding that even if properly discharged, the overseer was entitled to recover for his services so far as they were beneficial to the landowner, is so clear and convincing, and so fully vindicates the charge of the Circuit Judge in the present case that we quote from it at length:

"The only ground to be considered in this case is the supposed misdirection of the presiding Judge in charging the jury that they were not at liberty under any circumstances to apportion the compensation of the plaintiff to the services actually rendered, and that they were bound to allow him the stipulated wages for the year or nothing. * * * The relation of employer and overseer, is one which the state of the country renders almost indispensably necessary to every planter, and collisions do and necessarily must arise, and it is fit that there should be some settled rule on the subject. When the employer wantonly and without cause turns off his overseer, at a season of the year when it would be impracticable to get employment elsewhere, and his time is wholly lost, I should feel no hesitation in enforcing the rule rigidly, not only as punishment, but as a just remuneration to the overseer; and so when the overseer abandons the employer without cause, or by his neglect inflicts a loss on him commensurate with the services which he has performed, he clearly deserves no compensation.

"There is, however, a third class of cases for which it is necessary to provide, and which are perhaps of the most common occurrence. They are those where the employer reaps the full benefit of the services which have been rendered, but some circumstances occur which renders his discharging the overseer necessary and justifiable, and that perhaps not immediately connected with the contract, as in the present case. It happens frequently, too, that it becomes a question of great difficulty to ascertain with whom the wrong first commenced. I cannot reconcile it to my notions of natural justice, that the overseer should not recover a compensation for the services, so far as they were directed, and which have been beneficial to the employer. And I am unable to discover any evil which is likely to result from submitting such a matter to the sound discretion of a jury of the country. As a matter of expediency I should be disposed to establish it as a rule. This conclusion is supported by the principle of the exception before noticed, and by the common case in which a party is permitted to prove by way of defense that owing to some defect in the execution of the work and labor done and performed, the thing is not worth so much as was stipulated for; and the still more comprehensive principle, that a partial failure of consideration is a good ground of defense. Cases of this description are of very frequent occurrence, and although this question has never been judicially determined, it may be clearly collected from them, that the prevailing opinion is favorable to an apportionment. In some cases the jury have found the entire sum, but in most they have apportioned it when the circumstances justified it."

Again, in *McClure* v. *Pyatt,* 4 McC. 26, the Court said: "In the case of *Boyd* v. *Byrd,* decided at the last sitting in Columbia, which was an action by an overseer against his employer, the Court determined after great deliberation, that although the contract was to pay a gross sum for the year's services, the jury might, when the parties had dif-

fered and separated before the end of the year, apportion the damages to the services actually rendered, if upon a view of all the circumstances that course was best calculated to effect substantial justice between them, and that case is referred to for the doctrine of law on the subject." The authority of these cases was recognized in *Eakin* v. *Harrison,* 4 McC. 249, and *Verner* v. *Sullivan,* 26 S. C. 327, 2 S. E. 391.

Apply this established rule to the present case. When the plaintiff was discharged, or abandoned the crop, on 17th August, the season of cultivation was over, and nothing remained but the work of harvesting and preparing the crop for market. The loss to the defendant could not have been so complete as to warrant him in declaring a complete forfeiture of all the fruit of plaintiff's labor; but under the rule above stated, it was for the jury to say what compensation the plaintiff ought to have, taking into consideration all the evidence of loss resulting to the landowner from his default.

It seems to me clear that the judgment of the Circuit Court should be affirmed.