12614

SWIFT & CO. (FERTILIZER WORKS) v. SULLIVAN *ET AL.*

(147 S. E., 315)

*Messrs. George K. Laney* and *C. T. Laney*, for appellants,

*Messrs. Pegues & Murray*, for respondent,

March 13, 1929.

The opinion of the Court was delivered by Mr. Acting Justice A. E. Hill.

This action by the plaintiff, Swift & Co. (Fertilizer Works), against J. D. Sullivan and Gussie W. Sullivan, defendants, commenced in the Court of Common Pleas for Chesterfield County, February 29, 1922, is a suit on a promissory note, given by the defendants to the plaintiff, for the sum of $1,304.28, dated June 15, 1921, payable October 15, 1921, bearing interest after maturity at the rate of 8 per centum per annum, and with a provision for the payment of 10 per centum attorney's fees, if placed in the hands of an attorney for collection. The answer of the defendants admitted the execution and delivery of the note, but alleged that the same was given for the purchase price of fertilizer

purchased by the defendants from the plaintiff under a written contract, and further alleged that, because of the plaintiff not shipping the fertilizer in time, the defendants' crops were late and damage by boll weevils and drought to the extent of $2,450, and asked for judgment for that amount as an offset to the amount of the note. In the plaintiff's reply, the counterclaim was denied.

The case was tried before his Honor, Judge Thomas S. Sease, and a jury, at the April, 1925, term of Court of Common Pleas for said County of Chesterfield. At the conclusion of all the testimony, his Honor, Judge Sease, on motion of the attorneys for the plaintiff, directed a verdict for the plaintiff against both of the defendants for the full amount of the note, and refused to submit to the jury the question of the counterclaim. From the verdict directed and judgment entered thereon, the defendants have appealed to this Court.

While there are several questions raised by appellant's exceptions, the principal question presented is whether or not the presiding Judge erred in directing a verdict for the plaintiff upon the grounds appearing in the transcript of record, to wit: "On the ground that the damages alleged in the answer were special damages, and there was no proof of notice to the plaintiff at the time of the making of the contract of the circumstances from which special damages might arise upon breach of the contract, and, such damages could not be set up in this case in the absence of allegations and proof of such notice."

The allegations contained in defendant's answer pertinent to the questions involved are as follows:

"The defendants further answering the complaint respectfully show to the Court that they signed a contract with Swift & Company for 57 tons of guano for two plantations on March 8, 1921, 45 tons of which were for the plantation at Cash, S. C., and 12 tons of which were for the plantation at Laurens, S. C., and said contract was approved on March

10, 1921, and it was agreed that said fertilizer was to be shipped at once to said points, but these defendants allege that there was long delay on the part of the plaintiff in shipment of this fertilizer, and was not billed out until April 6th, and was not landed until April 15, 1921, although repeated demands were made upon the plaintiff for this fertilizer to be shipped at once, and several telegrams were sent requesting shipment to be made at once, and the agent of Swift & Company called more than once over long distance telephone to the plaintiff for shipment at once and the answers of the plaintiff in each instance was that it would be shipped at once and notwithstanding the fact that the season was getting late for planting and the repeated demands for shipment at once and notwithstanding the fact that had the plaintiff shipped said fertilizer promptly, it would have reached said points within 48 hours after shipment, the said fertilizer did not reach the above-named points until about April 15, 1921.

"And these defendants further allege that the delay in the shipment above set forth caused a great delay of several weeks in getting said crops planted and as a result of this delay and negligence on the part of the plaintiff the crops of cotton were very late in maturing, and were badly damaged by the boll weevils and drought to such a great extent that only 28 bales were made on 96 acres of good land on the Cash place although 900 pounds of fertilizer were used on Cash place and 100 pounds of nitrate of soda and defendants allege that this land with the seasons as they were in 1921 would have produced from one-half to three-fourths of a bale per acre with such cultivation as was given it in 1921, and these defendants allege that on account of ·the negligence and the delay in the shipment of the said fertilizer causing late planting and lateness of crop in maturity and being damaged as above set forth there were a shortage of at least 20 bales of cotton on this farm and these defendants allege that they were damaged to that ex-

tent on the account of the acts of the plaintiff above set forth, and these defendants further allege that other lands planted in time on this same plantation under the same management with less fertilizer produced from one-half to three-fourths of a bale per acre.

"And these defendants further allege that on the farm of 75 acres in Laurens County only 20 bales were produced in the year 1921, which farm had it been planted in time under the same conditions and with the same work and with the same fertilizer would have produced from one-half to one bale of cotton per acre, and these defendants allege that the shortage of this crop amounting to 15 bales of cotton at least, was caused by delay and negligence of the plaintiff in the shipment of the said fertilizer as above set forth, causing lateness of planting of said crop and damaging the defendants to at least the values of the said 15 bales of cotton to the amount of at least $1,200.00."

Under our view of the case, we do not consider it necessary to state the testimony in detail, but it is sufficient to state that there was testimony which tended to establish the material allegations contained in defendants' answer.

The rule governing the recovery of special damages is stated in 17 C. J., 746-748, as follows:

"Damages arising out of the special circumstances surrounding the contract and different from those which would naturally and probably flow from the breach of such a contract may be recovered, where it is shown that at the time of making the contract the defaulting party had knowledge of such special circumstances. In the absence of proof of knowledge of such special circumstances by the defaulting party at the time the contract is entered into, only the amount which would arise generally and in the great multitude of cases not affected by any special circumstances from such a breach of contract may be recovered. In order that knowledge of special circumstances may increase the liability arising in the case of a breach of the contract it must have been

brought home to the party sought to be charged under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it. Mere notice, as such, does not have the effect of rendering a party liable to more than ordinary damages, and obviously notice given after the contract is made is not sufficient. Conversely, where the parties contract with reference to special circumstances, a party cannot relieve himself from liability for special damages resulting from special circumstances by a mere statement before entering into the contract that he would not be liable therefor. It may be noted also in this connection that the doctrine of notice is not applicable to direct damages, and that notice of special conditions will not change consequential into direct damages. Where defendant has negligently failed to perform a service which he has contracted to perform, the circumstances may be such that he will not be permitted to assert that he did not know the purposes for which plaintiff desired such service. Whether special circumstances were within the contemplation of the parties at the time of making the contract is, upon conflicting evidence, a question of fact for the jury, and the burden of proof is upon the party asserting the fact."

However, it is the contention of appellants that the damages sought in this case are not special damages, and we are of the opinion that appellants' position is correct. For a clear statement of the difference between the two kinds of damages, general and special, reference may be had to the opinion of this Court, written by Mr. Justice Watts, now Chief Justice, in the case of *Vann v. Tyler,* 106 S. C., 377, 91 S. E., 301, wherein the Court stated: "The difference between actual damages and special damages are from the act done; damages naturally flow in general damages; they both naturally and necessarily flow. In special damages they naturally flow, but not necessarily flow. In general damages the wrongful act done of necessity requires

damage to be done and flow from the act and suffered by the party whose rights have been invaded, and the damages must be the legitimate consequence of the wrong done, and follow as a natural, necessary and proximate result. When this is the case the act of wrongful invasion fixes the right of action of the party whose rights have thus been wrongfully invaded, and he is entitled to recover such damages and follow the natural, necessary and proximate result. But if the original and wrongful act of the defendants complained of gives rise to any damage other than the general damage that would of necessity naturally flow from the wrongful act, and party injured was specially damaged, that is, injured in any other way than would naturally flow from the wrongful act, but not necessarily flow, then it would be necessary for the plaintiffs to allege facts sufficient to show a cause of action wherein he was entitled to special damages.

"If the result of the wrong done is unusual and extraordinary under the circumstances, but if it flowed from the act wrongfully done, then upon sufficient allegation first and proof afterward if it flowed proximately from the wrongful act done the party injured could recover, although the wrongdoer could not have anticipated the particular result that followed. Here the result would be not the natural and necessary sequence of the act done, but something that did not of necessity follow. Under this state of facts it would be necessary to allege and prove special damages. But in the case at bar no such objection was made before the Circuit Court on the ground urged here.

It is a fact, of which this Court should take notice, that the early planting of cotton in this State is necessary for a successful crop, and especially is this true since the coming of the boll weevils and the ravage to the cotton crop resultant therefrom. Furthermore, this fact must be presumed to be especially, if not peculiarly, within the knowledge of the officers of the plaintiff (fertilizer company) and imputed to the plaintiff, for the plaintiff, along with other fertilizer companies, has been engaged in the

manufacture of fertilizer and selling the same to farmers to be used in the growing of cotton throughout the cotton belt for a number of years. Here we might add that it is common knowledge that many farmers, merchants, and other business men, including fertilizer companies, have suffered financial ruin because of the infestation and destruction of the cotton crop by the boll weevil, and, while many methods have been suggested to aid in controlling the infestation, it is common knowledge that cotton cannot be grown successfully in the boll weevil belt without early planting, it matters not what other methods may be employed in fighting the "pest." From the very nature of the business of fertilizer companies, these facts are peculiarily within their knowledge, and, when the plaintiff contracted to furnish the defendants with fertilizer for their cotton crops at a certain time, it must be presumed that the plaintiff knew that the failure to comply with the contract in this respect would result in injury to the defendants, and that only a few days' delay would result in injury. Moreover, the agent of the plaintiff, who sold to the defendants the fertilizer in question, was a resident of the same section in which the defendants were engaged in farming and where the fertilizer was to be used, and is presumed to have had full knowledge of boll weevil conditions in that locality and the urgent need of delivering the fertilizer according to contract time, well knowing that defendants' cotton crop could not be successfully grown, and that injury would result to the defendants in the event the fertilizer as not delivered on time. In our opinion, the damages alleged and sought by the defendants are not special damages, but general damages, which naturally and necessarily flow from the failure to perform the contract in the particulars alleged, and there was no necessity of alleging and proving notice. Whether or not the defendants sustained damages as alleged is not a matter for this Court to pass upon, but, according to our view of the case, there was some testimony tending to establish the allegations set forth in defendants' answer, and the issues, therefore, should have been submitted to the jury.

In addition to the authorities above cited, in support of this position, we call attention to the following cases, cited by appellants: *McDaniel v. Terrell*, 1 Nott & McC., 343; *Harzburg & Co. v. Southern Railway Co.*, 65 S. C., 539, 44 S. E., 75; *Givens v. Electric Co.*, 91 S. C., 417, 74 S. E., 1067; *Simkins v. Western Union Telegraph Co.*, 97 S. C., 413, 81 S. E., 657; *Jenkins v. Railway Co.*, 58 S. C., 373, 36 S. E., 703; *Martin v. Seaboard Air Line Railway*, 70 S. C., 8, 48 S. E., 616; *Lester v. Fox Film Corporation*, 114 S. C., 533, 104 S. E., 178.

In addition to respondent's contention that the damages sought by the defendants constitute special damages, it is also contended that the delay, if any, in the shipment of the fertilizer, afforded no ground for damages, contending that the contract called for shipment "on or before March 25, 1921," subject to confirmation by the plaintiff at its Atlanta office, and that the shipment of the fertilizer was made on April 6th, and delivered at Laurens on the 9th of April and at Cash on the 12th of April. The testimony as to the time of delivery is in conflict. According to the testimony on the part of the plaintiff, it was delivered to the railroad for shipment on the 6th of April, and actually delivered to the consignee at Laurens on the 9th and at Cash on the 12th, whereas, according to the testimony on the part of the defendants, it was not delivered until about the 15th of April. The contract dated March 8, 1921, was executed by the defendants and Mr. McManus, as agent for the plaintiff, March 1, 1921, according to defendants' testimony, and it is clear that it was approved by the company at its Charlotte, N. C. office, as required by its terms, March 10, 1921. So it clearly appears that the fertilizer company had ample time, after confirming the contract made by its agent, Mr. McManus, to make shipment on the date specified in the contract, and, even if plaintiff's version of the testimony on this point be accepted as correct, there was a delay of from ten days to two weeks, enough time to greatly interfere with making a cotton crop. But the testimony on

the part of the defendants was that the fertilizer was not delivered until about the 15th of April. So, according to the defendants' version of the facts, there was a delay of about three weeks.

It is further contended that the season for planting cotton had not passed when the fertilizer arrived.

While it is true that some farmers, those, for instance, in the northern portion of the Piedmont section, where the damage to the cotton crop by the weevil has not been as great as in the other sections of our State, may sometimes delay until the 10th or even to the 15th of April to plant their cotton, it is common knowledge that cotton planted that late will not make a full crop, even under the most favorable conditions that could be expected, and especially is this true in the boll weevil belt, as, for instance, in that section of the State where the defendants were operating their farming interests. Furthermore, the Court will take notice of the fact that cotton cannot be planted immediately upon the arrival of fertilizer which is to be used in the production of a cotton crop. The land has to be prepared and the fertilizer distributed before cotton seed can be put into the ground, and this necessarily requires considerable time.

It is also contended that the defendants should have made an effort to procure fertilizer elsewhere when the fertilizer purchased from the plaintiff did not arrive promptly. It may have been that the defendants were not able to go out into the open market and make a purchase, or it may be that the fertilizer needed could not be procured from another company on so short a notice, and it is likely that the defendants were daily expecting the arrival of the fertilizer they had purchased from the plaintiff. But whatever the cause might have been, and whether or not the defendants did what they could to minimize their damages, is a question within the province of the jury.

It is further contended that the judgment should be affirmed upon the additional ground that motion for a direction of a verdict should have been granted upon

the first ground stated in plaintiff's motion, which the presiding Judge refused, namely: "On the ground that this note, which is the basis of this suit, was signed by Mr. and Mrs. Sullivan on the 15th day of June, 1921, and by signing that note they waived any failure to comply with the contract." No notice having been given that the respondent would ask for the order of the presiding Judge to be affirmed upon this additional ground, the question is not before this Court, and will not be considered.

The contention that the acceptance of the fertilizer when it arrived was a waiver of any damages sustained by the defendants by reason of the delay of the shipment, and that such act furnishes a ground for sustaining the order of the Circuit Judge and the judgment entered thereon cannot be sustained. Whether such act amounted to a waiver was a question for the jury, to be considered along with all the other facts and circumstances pertaining to the question of waiver.

Another question raised by the exceptions is whether or not the presiding Judge erred in admitting the record of the case of *Palmetto Guano Corporation v. J. D. Sullivan et al.*

It does not appear from the transcript that such action was between the same parties as in the case at bar or related to the same subject-matter. We therefore think that his Honor was in error in admitting the record in evidence.

We do not consider it necessary to consider the other questions raised by the exceptions.

It is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, reversed, and the case remanded for a new trial.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): This is an action upon a note, from the defendants to the plaintiff, dated June 15, 1921, for $1,304.28, payable October 15, 1921, with interest from maturity at 8 per cent. per annum with 10 per cent. attorney's fees.

The complaint is in the usual form. The answer admits the execution of the note sued upon. It contains allegations *by way of defense,* hereinafter referred to. These allegations are not formally set up as a counterclaim, as they should have been, but, as the plaintiff replied thereto as a counterclaim, they will be considered as such.

The counterclaims amount to this: That on March 8, 1921, the defendants entered into a written contract with the plaintiff for the purchase of 57 tons of fertilizer, 45 tons to be delivered at Cash, S. C., and 12 tons at Laurens, S. C., which shipments were to be made at once; that the contract was confirmed by the plaintiff on March 8th, but that the shipments were not delivered until April 15th, notwithstanding repeated demands for immediate shipments in the meantime; that the delay in the shipments caused a delay of several weeks in planting, resulting in late maturing of the cotton and damage by boll weevil and drought, reducing the yield to the extent in value of $2,450, for which they demanded judgment less the amount of the note.

The evidence showed: That on March 8, 1921, a contract was signed up by the defendants and by one McManus, salesman of the plaintiff, for the purchase and sale of the fertilizer, at prices named, for shipment to Cash, S. C., "on or before March 25, 1921," subject to confirmation by the plaintiff at its office in Charlotte, N. C., that it was so confirmed on March 10th; that on April 2d the defendant, J. D. Sullivan, wired the plaintiff's Charlotte office: "Ship fertilizer at once," and on April 5th, the same thing; that the plaintiff replied by wire that day: "Your fertilizer will be shipped at once"; that the shipments were made on April 6th, and were delivered at Laurens on the 9th and at Cash's on the 12th; that no objection was made by the defendants to the delayed shipments, but they were received and used; there was no evidence that the defendants endeavored to obtain fertilizer elsewhere or that they were unable to do so; that on June 15th, the defendants executed the note in suit

for the purchase price of the fertilizer. Note: It is impossible, from the evidence in the case, to reconcile the amount of the note, $1,304.28, with the cost of the fertilizer according to the quantity and price named in the contract:

45 tons at $32.25 ..........................$ 1,451.25
12 tons at $39.75 ...........................   477.00

Total ...............................$ 1,928.25

Whether the difference was made up in cash or in another note does not appear. It does appear that 45 tons were delivered at Cash, S. C., and 12 tons at Laurens; that on June 18th the defendants executed a crop mortgage to secure the $1,304.28 note; that the defendants sustained a serious loss by reason of the delay in the shipment of the fertilizer, as alleged in their answer.

At the conclusion of the evidence counsel for the plaintiff moved for a directed verdict in its favor upon the grounds:

"1. That the note upon which the action is based was executed by the defendants on June 15th, 1921, and that they thereby waived the claim of damages by reason of the failure of the plaintiff to ship on or before March 25th;

"2. That the damages set up by the defendants in their answer are special damages, and there are no allegations in the answer nor is there any evidence of notice to plaintiff at the time of the execution of the contract of circumstances from which special damages might be reasonably expected to arise in case of delay in shipment."

His Honor, the presiding Judge, overruled the first ground, and sustained the motion upon the second, saying:

"The damages alleged in the answer here are *special* damages. And it is the law that where in an action damages are sought to be recovered for breach of contract and such damages are *special,* it is necessary for the party or parties claiming such *special* damages to allege and prove that the other party had notice at the time of the making of the contract, of the special circumstances from which such damages might

reasonably be expected to result. The answer in this case contains no allegation that there is any evidence that Swift & Company knew, when the contract was made, of any special use which plaintiff intended to make of the fertilizer, or of any scarcity of fertilizers which would prevent defendants from buying what they needed from other dealers, if plaintiff failed to furnish it."

The plaintiff has not given notice that it would ask that the order be affirmed upon the additional ground that the motion should have been sustained upon the first ground which was overruled. That issue is therefore not before this Court. The sole question is whether the order can be sustained upon the second ground.

For the reasons stated in my dissenting opinion in the case of *McCown-Clark Co. v. Muldrow*, 116 S. C., 54, 106 S. E., 771, which need not be here repeated, I think that the Circuit Judge was entirely right in directing a verdict for the plaintiff. The majority opinion in that case is not only inconsistent with my conclusions in the case at bar, but, as I view it, is distinctly in support of them. It is there said:

"One who suffers injury from the violation of his contract must minimize his loss by going into the market and purchasing other goods to supply his needs. *When, however, the season has passed and* [*the*] *injured party to the contract cannot procure the needed goods,* the reason of the rule does not apply, and the rule is not applicable. The allegation is that *the defendants could not procure the fertilizer when needed,* and he could not minimize his loss. The testimony offered eliminated the uncertainty usual in such cases, and should have been admitted." (Italics added.)

In the present case there was no such allegation and no such proof. The Court will take judicial notice of the fact that the season for planting cotton has not passed on April 12th; and the fact that the defendant accepted delivery on April 9th and April 12th adds support to that conclusion. There was no evidence of an effort even to procure fertilizer

elsewhere after March 25th, and certainly none that it could not have been procured which appears to be the basis of the *McCown case*.